**STATE, Plaintiff, v. MILAM, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 69004.   Decided October 26, 1959.

## OPINION

By NICOLA, PJ, THOMAS and McMAHON, JJ.

In the first count of the indictment it is charged that on or about the 9th day of December, 1957, in Cuyahoga County, the defendant, Dallas Edward Milam, with James Wilson Davis and Robert Lee Lyons, unlawfully, purposely, and while in the perpetration of a robbery killed Edward G. Lentz; and in the second count he is charged with having, on or about the same day in December, and with the same persons unlawfully, purposely and willfully killed Edward G. Lentz, a duly appointed, qualified, and acting policeman of the city of Cleveland, Cuyahoga County, while said Edward G. Lentz was in discharge of his duties as a policeman.

This is the second time that the defendant has been tried on this charge, our Court of Appeals having reversed the former conviction of the defendant and having remanded the case for a new trial. **State v. Milam, 108 Oh Ap 254; 9 O. O. 2d, 252.** Accordingly, this court has tried this case de novo, and bases its findings on the evidence presented during this trial. However this court deems itself bound to follow the law laid down by our appellate court. Nor are we unmindful that the decision of the Court of Appeals was appealed to the Supreme Court of Ohio and that the said court refused to admit said cause for review.

This court is convinced that a robbery was committed. But whether or not there was a conspiracy to rob, and whether or not the defendant later became a part and parcel of such conspiracy are questions which need not be answered in view of our conclusion regarding another phase of this case. For the same reason it is not necessary to decide whether the defendant was put under any duress by any acts of James Wilson Davis or Robert Lee Lyons.

Our Court of Appeals has ruled that:

"The question whether the robbery was still continuing or had ended when the homicide occurred was for the trier of the facts to determine in the light of the happenings subsequent to the stopping of the escape automobile by Lieutenant Lentz."

In passing on this question this court must also bear in mind the further language found in the majority opinion as follows:

"One conclusion may very well be that an intervening event intruded in the continuity of the robbery and terminated it and that an entirely new episode was inaugurated involving Davis and Lyons but not Milam. Arrest of the three men would be such an intervening event."

Therefore this court must consider and weigh the evidence to determine the question posed by the Court of Appeals.

Before reciting the facts material to a determination of the question

presented by the Court of Appeals, it is important to review certain preceding events.

About 3:30 A. M. on the morning of December 9, 1957, the defendant Milam was asleep in his apartment which he shared with his brother. They were aroused by James Wilson Davis and Robert Lee Lyons. Davis induced Milam to accompany him and Lyons to the home of Buchanan in order to recover money previously lost in card games played at the Buchanan home. Davis informed Milam that the cards were marked. He insisted therefore that by exposing Buchanan he would return their losses. Milam refused to go with them until he was assured by Davis that there would be no trouble or violence.

Thereafter, Milam drove the three of them in his Cadillac to the home of Buchanan. Admitted to the residence by Buchanan, they were joined by Buchanan's wife and all proceeded to the basement. After a few minutes conversation Davis drew a revolver, pointed it at Buchanan and declared, "This is it"—"It's a stickup." The possession of this revolver was unknown to both Milam and Lyons.

At first Davis demanded only the money that Milam and Lyons had lost. However, this was followed by a tying up of both Buchanans in the basement; and Lyons, under orders from Davis obtained a bag containing both currency and coin. Two wrist watches and a man's ring were taken from the persons of the Buchanans by Davis and Lyons. Lyons, Milam and Davis proceeded upstairs, leaving the Buchanans tied up in the basement. In a second floor bedroom no further money was found but two revolvers were found under a mattress. Lyons, who already had secured a revolver from the dining room buffet, kept one of these additional revolvers. Milam, offered a .38 calibre revolver, declined to take it but did accept a smaller revolver .32 calibre in size. At the request of Lyons, Milam carried the money bag and also a partially filled bottle of Vodka, taken from the basement bar under orders of Davis.

Probably while they were still in the upstairs, Buchanan freed himself and got out through a basement window. He succceded in hailing a police car, manned by Lt. Lentz of the Cleveland Police Department. In the meantime, Davis, Milam and Lyons departed from the Buchanan home and entered the Cadillac automobile parked in front of the Buchanan home on Quimby Avenue.

From now on the facts, all of which are material to our conclusions, will be considered in detail.

When Milam reached the left or driver's side of his automobile, he opened the door and threw the money bag and the .32 calibre revolver on the floor towards the passenger side of the car, with the statement, "You told me there wasn't going to be any trouble, and you have robbed these people. I don't want anything to do with it." The .32 calibre revolver and two hundred and sixty five dollars in currency were later found by the police under the front seat on the passenger side, approximately where Milam said he throw the bag and the revolver.

With Milam driving, Davis in the middle and Lyons on the passenger side of the front seat, they proceeded to drive east on Quimby. Upon hearing a police siren, after going about 200 yards, Milam commenced

to stop, Davis, however, saying, "Don't Stop." Milam replied, "No, I'm going to stop," whereupon the Cadillac was brought to a stop.

The police car stopped a short distance behind the Cadillac, and Lt. Lentz got out, leaving Buchanan in the police vehicle. Walking to the driver's side of the Cadillac, Lentz dressed in full police uniform, asked, "What's going on here, somebody told me you robbed him." After a few words passed the officer removed the keys from the Cadillac, saying, "Stay in the car, you are under arrest." Lt. Lentz returned to the police car where he radioed for assistance.

Davis, Lyons and Milam remained in their seats until the officer returned. The officer took the bag of money from within the car, inquiring what it was, and began to count it. At this point Buchanan ran up to the car, saying "Yes, those are the fellows that robbed me." Then Lyons made two or three attempts to get out of the car on the passenger side, each time Lt. Lentz ordering him to stay in the car.

Finally Lyons did leave the car and started toward the rear of the car. As he did this, Davis moved toward the passenger side, telling Milam, "Let's run." On Milam's refusal, Davis said, "We have to man, we have to." Davis then got out of the car and ran east on Quimby.

As Lt. Lentz was standing within two feet of the open door on the driver's side, and while Milam was still seated behind the wheel, and Lyons was coming around the rear of the Cadillac, Lt. Lentz ordered Lyons to get back in the car two or three times.

Lyons, who by that time had reached the vicinity of Buchanan and the officer, fired twice, and Lt. Lentz groaned and fell to the ground, dying instantly from a bullet wound.

Asked about his state of mind when Lt. Lentz ordered the three men to stay in the car and told them they were under arrest, Milam answered, "Well, I thought I was under arrest or knew I was under arrest. The officer told me to say in the car, I'm under arrest and that's what I thought I was."

Thereafter Buchanan ran west toward his residence, encountering a second police car. The two officers got out of this car and ran east. Milam, still seated behind the wheel of the Cadillac, yelled to one of the officers, "Over here, Officer, someone has been hurt." Milam surrendered to the officer who approached the driver's side, who described his condition as excited, disheveled, and with tears in his eyes.

A full and fair consideration of the foregoing facts convinces this court that Lt. Lentz clearly evinced the purpose of taking the three men into the custody of the law, that he acted under real authority, that he made a constructive seizure or detention of their persons, and certainly insofar as defendant Milam was concerned he considered and understood that he was under arrest, and that he acquiesced and submitted thereto.

Hence the four essential elements of an arrest as defined in the majority opinion of our Court of Appeals are met, with respect to Milam.

It is also clear from the facts that Davis and Lyons having been similarly ordered under arrest, had the same opportunity as Milam to acquiesce and submit to the arrest, being fully aware that Milam had acquiesced and submitted to the arrest, but chose to act otherwise.

Accordingly, to paraphrase the language of the majority opinion of the Court of Appeals, this court unanimously finds that Milam's arrest was an event which intervened to break the continuity of the robbery and terminated it, as far as Milam was concerned. The homicide which occurred subsequent to Milam's arrest was an "entirely new episode" which was "inaugurated involving Davis and Lyons but not Milam."

This court has read the authorities on which each side places greatest reliance. But in the final analysis the authority which this Court concludes it must follow is the majority opinion of our own Court of Appeals.

So finding, the Court has no alternative but to find the defendant, Dallas Edward Milam, not guilty as to each count of this indictment.