## 35063. COLLIER v. THE STATE.

Nichols, Chief Justice.

Robert Lewis Collier appeals his conviction and sentence for the offense of murder, and appeals his convictions for aggravated assault and three counts of armed robbery.

### Summary of Facts

From the evidence presented at trial, the jury was

authorized to find the following facts:

On April 14, 1978, the appellant, an unemployed ironworker, left his home in South Pittsburgh, Tennessee and drove toward Georgia. He carried with him a brown paper grocery sack and a .32 caliber revolver. His express purpose for making the trip was to perpetrate an armed robbery, although he did not have a specific victim in mind.

When appellant arrived at Fort Oglethorpe, Georgia, he parked his car in a shopping center a short distance from the Plain and Fancy Florist and Bakery. He left his car, taking with him the grocery sack containing the revolver. Upon entering the florist shop, appellant approached Nancy Alonso, an employee, and asked her the price of one dozen roses. As she began to tell him the price, he pulled his revolver from the sack, pointed it at her, and said "Let's go." Appellant took her behind the counter where two other female employees were working and announced that he wanted their money. At that time appellant noticed that a fourth person, the owner of the shop, was in the store's kitchen. He had one of the other employees call her to the front of the store. Appellant made two employees, Pat Higdon and Gladys Amos, put the money they had in their purses in the sack that he was carrying. He then forced the owner to give him the money in the cash drawer. The women were forced to lie face down while appellant left the store. He then walked back to his automobile and left the shopping center, driving toward Chattanooga, Tennessee at a normal rate of speed.

Within minutes of the robbery, the Catoosa County Sheriff's Department in Ringgold, Georgia was notified. Sheriff's Investigator George Brown, who was in the sheriff's office at the time, responded to the call and began to drive to the scene. Deputy Sheriff Baxter Shavers, who was at a different location, also responded and likewise drove to the scene. While driving to Fort Oglethorpe, Investigator Brown received a description of the robber and the car he was driving from a radio broadcast. Still enroute but approximately five miles from the scene of the crime, Investigator Brown saw a car and driver matching the description. The car came from the direction of the shopping center where the crime occurred. The

investigator turned his car around and gave chase. When the appellant saw the blue lights, he stopped his car. He stepped out of the car with his wallet in his hand and started to walk back toward the investigator. Investigator Brown drew his gun but held it at his side and instructed the appellant to put his hands on his car and "spread eagle." Appellant complied. About this time the investigator noticed that Deputy Baxter Shavers had arrived and was approaching them with his gun drawn. Investigator Brown put his gun away and began to "pat down" the appellant. Deputy Shavers approached the appellant and began looking into his car.

Investigator Brown was at the point of "patting down" one of the appellant's legs, when the appellant grabbed for Deputy Shavers' gun and took it away from him. The appellant who weighed over 300 pounds, threw Investigator Brown off of him and fired two shots as the investigator was attempting to draw his gun. One shot hit the investigator in the hip and he fell face down on the pavement.

Deputy Shavers, who was then unarmed, ran back toward his car. Appellant shot once at the fleeing officer, killing him instantly. Thereafter, he continued to fire at the officer as he was lying on the road. Although Deputy Shavers did not receive more than one direct hit, he did sustain multiple wounds from fragments of bullets that broke apart upon impact with the roadway. The officer's pistol had all six rounds expended when it was recovered.

Thereafter, appellant returned to his car and began to leave. Investigator Brown rolled away from the appellant's car, fearing he would be run over. Brown recovered his weapon and fired six shots into appellant's automobile as he drove away.

Appellant drove back to his house in South Pittsburgh, Tennessee. On the way back he threw the officer's gun out of the car as well as the grocery bag and some of his clothing. These items were subsequently recovered.

After he arrived at his house, appellant took his wife and two children and fled to Alabama. After staying overnight, he attempted to return the next afternoon to his home in Tennessee. By this time a lookout had been

placed on appellant's automobile. As he entered South Pittsburgh, local authorities received a report from Alabama authorities that a car matching the description of the one used in the robbery was entering their jurisdiction. Before he could reach his home, the Tennessee authorities spotted the appellant's car and gave chase. Appellant attempted to elude them by passing traffic on the shoulder of the road but was eventually forced to stop the car.

Appellant was arrested, placed in a patrol car and given his constitutional rights. He was thereafter transported to the local jail. Within approximately one hour after his arrest, appellant gave a statement to a Tennessee State Trooper, implicating himself in the crimes. Appellant then requested by name an attorney who had represented him before. The attorney came to the jail and conferred with appellant regarding the case. Appellant was placed in a lineup, while his attorney was present, and was identified as the man who perpetrated the robbery and murder. Thereafter, over his attorney's advice but with his attorney present, and after signing a waiver of rights, he gave a complete confession to the authorities. Appellant waived extradition and was returned to Georgia.

### Enumerations of Error

1. Darlene Hurt, a witness for the state, observed the appellant as he got out of his car in the parking lot of the shopping center prior to the robbery at the florist shop. She gave a physical description of the person and the car. These were given to the local law enforcement authorities immediately after the robbery.

The day after the robbery and murder, but prior to appellant's capture, Darlene Hurt was taken to Dalton, Georgia and was hypnotized by a psychiatrist, Dr. Biggers. Law enforcement authorities requested such a procedure in the hopes of enhancing the witness's memory and thereby enabling them to apprehend the suspect. Prior to the completion of the questioning under hypnosis, the appellant was apprehended. An attempt had been made to hypnotize Investigator Brown for the same purpose but due to the pain of his injury, it was

unsuccessful.

On his own motion the trial judge issued an order which, under pain of contempt, directed that no evidence of hypnotism or the use of hypnotic trances was to be mentioned by counsel for the defendant, counsel for the state, or any person called upon to testify as a witness; that no evidence obtained by the "State or any other party" from any witness under the influence of hypnosis was to be admissible; and that defense counsel could not cross examine any witness to test his credibility by making any inquiry as to hypnosis.

Appellant objected to the court's order, and in a pretrial hearing appellant made the following offer of proof: "For the record, but for the court's ruling prohibiting our cross-examination of the witness on hypnosis, and introducing any evidence about hypnosis, we would have called Dr. Biggers, in addition to cross-examining various of the State's witnesses.

"Dr. Biggers informed me over the phone that he made an attempt to hypnotize several of the State's witnesses, and several of them may very well have been hypnotized, even if the witnesses themselves thought that they were not hypnotized, that they themselves could know whether they were hypnotized or not, and he further stated that there was a tremendous potential for abuse while a person is in a hypnotic trance, particularly when the questioning is not done by a medical doctor, and even then, the person is in a state of susceptibility, or suggestion, so that after the effort to hypnotize a witness, a witness may seriously and honestly believe that they witnessed events which they did not witness at all, suggestions which were merely planted there by the suggestion of hypnosis and in this particular case, several of the prosecution witnesses, including, but not limited to Deputy Brown, attempts were made to hypnotize them, and they were questioned by other law enforcement officers, other than Dr. Biggers."

Appellant enumerates as error the trial court's issuance of the order. The reliability of hypnosis has not been established. Therefore, statements made by one under hypnosis are inadmissible, and by pretrial order the trial judge may prevent the introduction of such

statements. *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978). In this case, however, the trial court went further and prevented the cross examination of witnesses regarding their being subjected to hypnosis. Such an order is overly broad. *Emmett v. State,* 232 Ga. 110 (205 SE2d 231) (1974); *Creamer v. State,* 232 Ga. 136 (205 SE2d 240) (1974). At the conclusion of the district attorney's examination of the state's first witness, Darlene Hurt, the trial court rescinded its order and allowed cross examination as to hypnosis for the purpose of testing the witness's credibility or the credibility of any other witness who had been hypnotized.

At this point defense counsel moved for a continuance until the next term on the grounds that at the very least he wanted time to obtain Dr. Biggers and have an opportunity to seek other experts.

The trial court denied the motion, and appellant claims error in this regard. Appellant argues that the trial court's order and the failure to grant a continuance chilled his defense and prevented adequate preparation of expert testimony and cross examination. However, the record does not support such a claim.

The grant or refusal of a motion for continuance is within the sound discretion of the trial court and will not be set aside on appeal unless manifestly abused. *Dutton v. State,* 228 Ga. 850 (2) (188 SE2d 794) (1972); *Campbell v. State,* 231 Ga. 69 (200 SE2d 690) (1973).

In response to appellant's motion, the trial court ordered Dr. Biggers to be brought in as the court's witness for the purpose of being examined by the appellant. By calling Dr. Biggers as the court's witness, appellant's rights to closing argument were preserved. Code Ann. § 27-2201.

It is apparent from the offer of proof that defense counsel had prepared his case with regard to hypnosis and had interviewed Dr. Biggers by phone prior to the trial. In addition, defense counsel had been provided in response to a Brady motion a transcript of the questions and responses of Darlene Hurt while she was under hypnosis. Darlene Hurt was subjected to an intensive cross examination regarding her being subjected to hypnosis. See *Emmett v. State,* supra. Furthermore,

examination of Dr. Biggers by defense counsel allowed appellant to attempt to enter into evidence each point which counsel had offered to prove prior to trial and to offer such proof without losing the valuable right to closing argument. Appellant must demonstrate error which has harmed him. He has failed to demonstrate any such harm by either the court's failure to grant a continuance or the court's issuance of the order and its rescinding thereof. *Robinson v. State,* 229 Ga. 14 (189 SE2d 53) (1972); *Chenault v. State,* 234 Ga. 216 (215 SE2d 223) (1975). Appellant's first and second enumerations of error are without merit.

2. Appellant's third enumeration of error argues that a mistrial should have been granted because the district attorney violated the pretrial order. This enumeration is based upon the grounds that the state called a witness who had been hypnotized. While it does not appear which details Darlene Hurt remembered after her hypnosis, she gave essentially the same statements to law enforcement officers prior to her being hypnotized. She was extensively examined by defense counsel as to what parts of her statements were attributed to hypnosis. See *Emmett v. State,* supra. Furthermore, the admission of such testimony is harmless, considering the overwhelming evidence of defendant's guilt, and the limiting instructions given in the charge by the trial court. *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976); *Hamilton v. State,* 239 Ga. 72 (235 SE2d 515) (1977); *Hawkins v. State,* 146 Ga. App. 312 (246 SE2d 343) (1978). The record does not support the inference that the state wilfully brought into evidence any statement made by the witness while under hypnosis. There was no manifest abuse of discretion in the trial court's refusal to grant a mistrial. Therefore, appellant's third enumeration of error is without merit. *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977); *Fortson v. State,* 240 Ga. 5 (239 SE2d 335) (1977).

3. In Count 1 of the indictment, appellant was charged with murder while in the commission of a felony, to wit: armed robbery. Code Ann. § 26-1101 (b). The appellant enumerates as error the failure of the trial court to grant a motion for directed verdict as to Count 1 on the

ground that the armed robbery, the underlying felony for the purpose of the felony-murder rule, had terminated as a matter of law at the time the murder was committed. Further, it is argued that since the underlying felony terminated prior to the murder, the verdict as to Count 1 is contrary to law and therefore is void.

A murder may be committed in the commission of a felony so as to come within Code Ann. § 26-1101 (b), although it does not take place until after the felony itself has been technically completed, if the homicide is committed within the res gestae of the felony. *Jones v. State,* 220 Ga. 899 (142 SE2d 801) (1965). A homicide is within the res gestae of the underlying felony for the purpose of the felony-murder rule if it is committed while fleeing the scene of the crime. *Jones v. State,* supra. The weight of authority holds that the underlying felony continues during the escape phase of the felony if there is continuous pursuit immediately organized, and the felony terminates at the point the perpetrator has arrived at a place of seeming security or when the perpetrator is no longer pursued by authorities. Carter v. United States, 223 F2d 332 (D.C. 1955), cert. den. 350 U. S. 949 (1956); Campbell v. State, 227 S2d 873 (Fla. 1969), cert. den. 400 U. S. 801 (1970); Coleman v. United States, 295 F2d 555 (D. C. 1961), cert. den. 309 U. S. 813 (1962).

The mere fact of delay in beginning the pursuit until an alarm can be sounded and pursuit organized and instituted does not necessarily segregate the flight and prevent its being part and parcel of the crime. State v. Habig, 106 Ohio St. 151 (140 NE 195) (1922); State v. Jackson, 71 Mont. 421 (230 P 370) (1924).

The underlying felony can also terminate for the purpose of the felony-murder rule if the perpetrator is arrested. People v. Smith, 232 NY 239 (133 NE 574) (1921); State v. Milam, 163 NE2d 416 (1959).

In support of his argument, appellant urges that the underlying felony, the armed robbery, terminated because the gun used in the armed robbery had been abandoned prior to the homicide and that the appellant was technically under arrest prior to the homicide. This court does not agree.

Deputy Brown met the appellant some five miles

from the crime scene in response to an armed robbery call on his radio and immediately pursued the appellant. The record does not support the contention that the appellant abandoned his weapon. Rather, it shows that when he was arrested the next evening, it was discovered in the trunk of his car. While it is not clear where the pistol was at the time Deputy Brown stopped the appellant, it is clear, however, that when he left the scene of the robbery, he placed the weapon in the sack which contained the stolen money, and the sack was in the car when he was stopped. Furthermore, even if it is assumed that the appellant abandoned his weapon, the taking of property of another by an offensive weapon had been completed. Code Ann. § 26-1901 (a). Appellant was in the escape phase of the crime, which is as essential to the execution of armed robbery as the theft itself because the purpose of armed robbery is to get away with the contraband. People v. Goree, 30 Mich. App. 490 (186 NW2d 872) (1971). It makes no difference whether appellant was armed or not during his escape. He was still escaping with the fruits of his crime. Carter v. United States, supra. An armed robbery does not by implication require an armed escape.

It is urged that this court adopt a narrow definition of arrest in determining at what point an arrest terminates a felony for the purpose of the felony-murder rule. The question of at what point a person is under arrest so as to terminate a felony for the purpose of the felony-murder rule is a question of first impression in this state. Under our statute a person is under arrest whenever his liberty to come and go as he pleases is restrained, no matter how slight such restraint may be. Code Ann. § 27-201; *Caito v. State,* 130 Ga. App. 831 (204 SE2d 765) (1974). Applying this definition of arrest, appellant argues that he was under arrest at the point when he stopped his car in response to the deputy's blue light and placed his hands upon the car. However, the majority rule, which we adopt, is that for an arrest to terminate a felony for the purpose of the felony-murder rule, the perpetrator must be subjected to complete custody; he must acquiesce and submit to the arrest; and his surrender must be complete and continuous. People v. Smith, supra; Commonwealth v. Kelly, 337 Pa. 171 (10 A2d 431) (1940); State v. Milam,

supra; Coleman v. United States, supra; Campbell v. State, supra; People v. Goree, supra. Such a rule follows the rule of reason, especially in light of the fact that in this state, whether or not the underlying felony in a felony-murder prosecution is terminated, does not depend upon the technical completion of the felony. *Jones v. State,* supra.

Generally, whether a felony is terminated is a question of fact for the jury unless the evidence is so overwhelming that reasonable men could not differ. Commonwealth v. Kelly, supra; People v. Jackson, 285 NY2d 5 (231 NE2d 722), cert. den. 391 U. S. 28 (1967).

Under the evidence in this case, the jury was authorized to find that the arrest had not been completed prior to the homicide. The trial court properly submitted the issue to the jury. Furthermore, from the foregoing it follows that under the facts of this case, the judge did not err in failing to charge appellant's written request No. 4, to wit: "I charge you that if you should find that the defendant discarded his weapon, so that he was no longer armed, then you may consider this as a circumstance in determining whether or not the offenses of armed robbery terminated prior to the commission of any other offenses for which the defendant is charged." *Burgess v. State,* 218 Ga. 271 (127 SE2d 377) (1962). Appellant's enumerations of error nos. 4, 5, 6, 16 and 17 are therefore without merit.

4. Appellant's seventh enumeration of error is addressed to the following charge given by the trial court during the guilt-innocence phase of the trial: "You see, the homicide must stem from the commission of the felony in this case which is charged, that being Armed Robbery, and of course, as I said there's got to be some logical connection from the evidence, some logical connection between the offense and the alleged homicide." Appellant argues that this is an incorrect statement of the law in that it is not in the language of the statute (Code Ann. § 26-1101(b)). However, in determining the correctness of an isolated excerpt of a charge, the charge as a whole must be considered. *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977). The excerpt complained of occurred in connection with the jury's request for a recharge on the effect of an arrest in terminating the underlying felony. Taken in

context, the excerpt simply illustrated that the homicide must have occurred within the res gestae of the underlying felony. *Jones v. State,* supra. Looking to the charge as a whole, the jury was properly and fairly instructed that to find appellant guilty of murder, they must find beyond a reasonable doubt that the homicide occurred during the commission of the armed robbery. Division 5, infra. When viewed as a whole, the charge does not furnish any cause for a new trial. *Domingo v. State,* 212 Ga. 342 (92 SE2d 520) (1956).

5. The eighth enumeration of error contends that the trial court erred in charging the following: "I instruct you that malice may be express or it may be implied. It is express when it is manifested by external circumstances capable of proof. Malice may also exist even though there be no evidence of express malice, and this is what is known as malice implied." Appellant argues that since he was indicted for felony murder, the inclusion of a charge on malice was reversible error.

Immediately prior to the quoted charge, the court charged the jury as follows: "As to count 1, ladies and gentlemen, inasmuch as the defendant is charged with the offense of what we call, refer to as felony murder, murder in the commission of another felony, it is necessary that I give you in charge the law of this State relative to such charge, to such offense. I charge you that a person commits the crime of murder when in the commission of a felony he causes the death of another human being irrespective of malice." Later when the jury requested further instruction, the court instructed them "not to consider malice in this case at all . . . I merely gave you an illustration of it in order that you might understand felony murder." The court fully instructed the jury on the definition of murder applicable in this case. When viewed as a whole, the charge did not constitute reversible error. *Domingo v. State,* supra; *Hilton v. State,* 233 Ga. 11 (209 SE2d 606) (1974).

6. In enumerations of error nos. 9, 10 and 11, appellant argues that he cannot be convicted of the felony upon which the conviction of felony murder is based. This is correct. It is settled that the felony is a lesser included offense of felony murder. *Atkins v. Hopper,* 234 Ga. 330

(216 SE2d 89) (1975); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Thomas v. State,* 240 Ga. 393 (242 SE2d 1) (1977); *Hall v. State,* 241 Ga. 252 (244 SE2d 833) (1977); *Berryhill v. Ricketts,* 242 Ga. 447 (249 SE2d 197) (1978).

However, appellant's argument goes further and urges that under the facts of this case, he could not have been convicted of all three counts of armed robbery. This is not correct. The indictment under which appellant was tried was drawn in five counts. Count 1 charged appellant with murder while in the commission of a felony — that is, armed robbery. Count 3 alleged the armed robbery of the owner of the florist shop. Counts 4 and 5 alleged the armed robberies of the employees of the florist shop. The indictment did not specify which armed robbery was the felony that formed the basis of the felony murder in Count 1. That there were three separate and distinct crimes of armed robbery is not in question. All the offenses do not become lesser included offenses of felony murder under Code Ann. §§ 26-505 and 26-506. Only one felony is required to trigger the felony murder provision of Code Ann. § 26-1101 (b). Of course, the state could allege more than one armed robbery in the indictment and thereby cause multiple robberies to become lesser included offenses. *Atkins v. State,* supra. The remedy is not a new trial but reversal of the conviction of the underlying felony. *Burke v. State,* 234 Ga. 512 (216 SE2d 812) (1975); *Thomas v. State,* supra. To determine which felony formed the basis of the felony murder, one must look to the indictment or if it is not specified, then the evidence in the case. See *Burke v. State,* supra. Generally, the victim of the armed robbery is the murder victim, and that situation presents no problem. That is not the case here, however. In the instant case, the evidence shows that the robbery of the florist shop was the principal robbery. Appellant intended to rob it when he entered. He did not know who was in the store and was surprised to find more than one person. He robbed each person he found there with the exception of one person who did not have any cash. The robbery of the florist shop, through its owner, began the chain of circumstances that ultimately led to the death of the victim and was the felony wherein the homicide occurred. The two other armed robberies were

ancillary thereto. We therefore reverse the conviction for armed robbery alleged in Count 3 of the indictment and vacate the sentence imposed as to that count.

7. In the twelfth and thirteenth enumerations of error, appellant argues that a lesser included offense cannot be used as an aggravating circumstance under Code Ann. § 27-2534.1. These enumerations of error are without merit. A lesser included offense may constitute an aggravating circumstance even though it may not be punished separately. See *Pryor v. State,* 238 Ga. 698 (234 SE2d 918) (1977); *Stanley v. State,* supra. Appellant's reliance on Presnell v. Georgia, — U. S. — (99 SC 235, 58 LE2d 207) (1978) is misplaced. See Cole v. Arkansas, 333 U. S. 195 (1948).

8. Appellant's fourteenth and fifteenth enumerations of error argue that armed robbery is not a capital felony for the purpose of being an aggravating circumstance under Code Ann. § 27-2534.1(b)(2). These enumerations are clearly without merit. *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978).

9. The eighteenth and nineteenth enumerations of error urge that because appellant was not charged in an indictment with the crimes of escape or obstruction of an officer, the verdict and sentence, based upon the finding beyond a reasonable doubt of the aggravating circumstances that "the murder was committed for the purpose of preventing a lawful arrest of himself," Code Ann. § 27-2534.1(b)(10), were unlawful. However, this court has held that the Georgia statute, Code Ann. § 27-2534.1, does not require a conviction of the crime which forms the basis of an aggravating circumstance in order to allow a jury to find such an aggravating circumstance for sentencing purposes. *Hooks v. State,* 233 Ga. 149 (210 SE2d 668) (1974) vacated other grounds at 433 U. S. 917 (1977); *Pryor v. State,* supra. Likewise, the indictment need not contain notice of the aggravating circumstance. See *House v. Stynchcombe,* 239 Ga. 222 (236 SE2d 353) (1977).

Presnell v. Georgia, supra, involved substitution of aggravating circumstances, an issue not involved in this case. These enumerations of error are without merit.

10. As part of the aggravating circumstances, the jury found that "the murder was committed for the purpose of preventing a lawful arrest. . ." Code Ann. § 27-2534.1(b)(10). It found that the murder was committed against a peace officer while engaged in the performance of his official duties. Code Ann. § 27-2534.1(b)(8). Appellant argues that these statutory aggravating circumstances are identical under the facts of this case and therefore fall within the inclusion provisions of Code Ann. §§ 26-505 and 26-506. By their terms, Code Ann. §§ 26-505 and 26-506 do not apply to aggravating circumstances but to crimes. See *Pryor v. State,* supra. There is no merit in appellant's twentieth and twenty-first enumerations of error.

11. In the twenty-second enumeration of error, appellant complains that the trial court erred in limiting the introduction during the sentencing phase of the trial of certain evidence and circumstances that would mitigate punishment. Specifically, appellant's counsel called Shelly Jordan as a character witness and asked the following question: "What has been your association with Mr. Collier?" The witness answered, "Well, we were always close friends, and always got along well, and had a lot of mutual respect for each other." Appellant's counsel then asked, "[d]o you have respect for him now?" The state objected and the court sustained the objection. Code Ann. § 38-1804; *Gravitt v. State,* 220 Ga. 781 (141 SE2d 893) (1965).

At the outset it must be emphasized that the range of evidence allowed to be introduced in mitigation is very broad. In striking down Ohio's death penalty statute, the Supreme Court of the United States said: "[W]e conclude that the eighth and fourteenth amendments require that the sentencer in all but the rarest kind of capital case, not be precluded from considering as a mitigation factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, — U. S. — (98 SC 2954, 2965, 57 LE2d 973) (1978).

Under the Georgia statute, Code Ann. § 27-2534.1(a), *all* evidence in mitigation is admissible in the sentencing phase of a person's trial for a capital felony. This statute

has met constitutional approval. Gregg v. Georgia, 428 U. S. 157 (1976). However, the question which must be decided in this case is whether evidence which is inadmissible under the rules of evidence is to be admissible in all instances if offered as mitigation in the sentencing phase of a capital felony trial.

This question was presented to the United States Supreme Court in Green v. Georgia, — U. S. — (99 SC 2150, 60 LE2d 738) (1979). In that case, the petitioner Green attempted to introduce evidence during the sentencing phase of the trial in mitigation of punishment to prove that he was not present at the time the victim was shot and that he did not actually participate in the murder. To this end he sought to introduce the testimony of a third party to the effect that Green's co-defendant, Moore, confided in him that he had killed the victim after ordering Green to go on an errand. The trial court refused to allow the introduction of this evidence on the ground that it was hearsay.

The United States Supreme Court held that under the facts of that case, the excluded testimony was highly relevant to a critical issue in the punishment phase of the trial, and substantial reasons existed to assume its reliability. The court said that "in these unique circumstances the hearsay rule must not be applied mechanistically to defeat the ends of justice." Green v. Georgia, supra.

It is apparent from Lockett and Green that the Constitution requires that evidence which would be inadmissible under an evidentiary rule must not automatically be excluded if tendered in a capital case in mitigation of punishment. Rather, the potentially mitigating influence of the testimony must be weighed against the harm resulting from the violation of the evidentiary rule. *Cobb v. State,* 244 Ga. 344 (1979). In close cases the doubt should be resolved in favor of admissibility. Lockett v. Ohio, supra. Accordingly, weighing the potential mitigating influence of the witness's excluded testimony against the harm resulting from the violation of the rule, this court concludes that the exclusion of the testimony in this case was not reversible error.

In the case at bar, the testimony offered was not highly relevant. It was a personal opinion whether the witness himself still respected the appellant. The appellant called a number of character witnesses, of which this witness was but one, and this witness was allowed to testify for the purpose for which he was called. See *Gravitt v. State,* supra and *Cobb v. State,* supra. Prior to the excluded testimony, another witness testified that the appellant's character was still good. The excluded testimony therefore was somewhat cumulative in character. Appellant was given wide latitude during the sentencing phase of the trial, and a review of the record shows that testimony was admitted which went beyond that normally allowed to be elicited from character witnesses. The trial court allowed evidence of the appellant's reputation for hard work, his reputation as a family man, and a witness's personal observation of his credit rating. Defense counsel did not make any offer of proof of any specific acts of good conduct nor did he attempt to offer evidence of any such acts. In fact, the one response of the witness now in question was the only evidence excluded by the trial court during the sentencing phase of appellant's trial. Under these circumstances, considering the danger of repetitive or irrelevant testimony inherent in character evidence and the minimal, if existent, mitigating influence of the excluded testimony, the trial court did not abuse its discretion in excluding the evidence.

12. In the twenty-third enumeration of error, appellant urges that it was error for the trial court to refuse to charge the following upon written request: "I charge you that in determining whether or not to impose the death sentence upon this defendant you are authorized to take into consideration the personal characteristics of this individual that mitigate against capital punishment, including, but not limited to, the extent of his co-operation with the police, his emotional state at the time of the trial, his age and family circumstances."

This argument is without merit. The trial court charged that the jury was to "consider all the evidence submitted in both phases of the trial in arriving at your

verdict, including any and all evidence of mitigating circumstances." It is not required that specific mitigating circumstances be singled out by the court in giving its instructions to the jury. *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978). To influence the jury by use of examples may limit their discretion to consider other matters in addition to the examples given. A charge such as the one requested may influence the jury either to weigh mitigation against aggravation or to limit their consideration to whether mitigating circumstances exist. Under our statute the jury may recommend a life sentence even though no mitigating circumstances are found. All the mitigating circumstances which the accused has introduced and wishes to be considered may be argued to the jury, and a nonspecific charge, free of examples, allows the jury to consider anything it finds proper.

We have thoroughly reviewed the instructions of the trial court during the sentencing phase of the trial and find that the charge was not subject to the defects dealt with in *Fleming v. State* 240 Ga. 142 (240 SE2d 37) (1978) and *Hawes v. State,* supra.

13. In the twenty-fourth and twenty-fifth enumerations of error, the appellant attacks the constitutionality of Code Ann. § 26-2534.1(c). He asserts that the portion of the statute that requires the trial court to give in writing to the jury the statutory instructions violates due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution because without a concurrent right to send written instructions to the jury as to mitigating circumstances, the aggravating circumstances are prejudicially emphasized. Appellant's argument is without merit in that the written material furnished to the jury is purely of a procedural nature and amounts to nothing more than a written formulation of the jury's potential verdicts. *McCorquodale v. State,* 233 Ga. 369 (211 SE2d 577) (1974); *Spraggins v. State,* 243 Ga. 73 (252 SE2d 620) (1979); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979).

14. During the guilt-innocence phase of the trial in cross examining Deputy Brown, the defense counsel

asked about training procedures on the proper method of arresting a subject who is deemed armed and dangerous. The trial court prohibited this line of questioning on the grounds that negligence of the officer in making the arrest is not material to the guilt or innocence of the defendant. Appellant asserts error, urging that the court's ruling prevented the introduction of mitigating evidence; however, appellant did not attempt to introduce any such evidence during the sentencing phase of the trial. *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12) (1974); vacated on other grounds, 433 U. S. 917 (1977). Clearly this line of questioning was irrelevant, and the trial court did not abuse its discretion in refusing to allow it during the guilt-innocence phase of the trial. Therefore, the twenty-sixth enumeration of error is without merit.

15. The twenty-seventh enumeration of error urges that the trial court erred, over objection, in excluding seven prospective jurors in violation of Witherspoon v. Illinois, 391 U. S. 510 (1968). However, each prospective juror excluded by the trial court upon voir dire stated that he or she could not impose the death penalty, regardless of the facts and circumstances that might emerge in the course of the proceedings. The jurors' responses satisfied the tests set forth in Witherspoon, supra. *Potts v. State,* supra; *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978); *Alderman v. State,* supra. This enumeration of error is without merit. *Smith v. Hopper,* 240 Ga. 93 (239 SE2d 510) (1977); *Hawes v. State,* supra.

16. Appellant's twenty-eighth enumeration of error attacks the constitutionality of Ga. L. 1968, pp. 1249, 1276 (Code Ann. § 26-1101(b)) on the ground that the imposition of the death penalty on proof of a felony murder leads to the "freakish and wanton" executions condemned in Furman v. Georgia, 408 U. S. 238 (1972). However, the procedural safeguards embodied in Code Ann. § 27-2534.1 et seq. apply to felony murders as well as to any other offense in which the death penalty is authorized. These procedural safeguards were enacted in order to prevent the abuses alluded to in Furman, supra, and they have been held to be constitutionally adequate in that regard. Gregg v. Georgia, supra. It is beyond constitutional

question that the state has authority to enact felony murder statutes. See Lockett v. Ohio, supra. This enumeration is without merit.

17. The twenty-ninth enumeration of error addresses itself to sentence and will be considered in our sentence review.

18. Appellant argues that the manner of execution in Georgia is unconstitutional in that death by electrocution is repugnant to the Eighth Amendment of the United States Constitution. Appellant's thirtieth and thirty-first enumerations of error are without merit. In Re Kemmler, 136 U. S. 436 (1890); Gregg v. Georgia, supra; *Collins v. State,* supra; *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979).

### *Sentence Review*

In our sentence review, we have considered the aggravating circumstances found by the jury and the evidence concerning the crime and the defendant. We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537(c)(1-3)), as we have in each case involving a death penalty under this statute. We find that the evidence factually substantiates the verdict and overwhelmingly supports a finding of guilt by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, — U. S. — (99 SC 2781, 61 LE2d 560) (1979).

Appellant asserts that because all but four of the veniremen had been exposed to pretrial publicity, the sentence of death was imposed under the influence of passion or prejudice. While there was extensive pretrial publicity which terminated nine days prior to trial, all news accounts were accurate and factual. There were no undue inflammatory articles or editorials which could be construed as inciting passion or prejudice against the appellant regarding his punishment.

A review of the voir dire examination reveals that the trial court conducted, out of the presence of the other prospective jurors, the individual voir dire of each prospective juror who indicated any bias, thereby eliminating the danger that other jurors might be biased by any statements made during the individual examination. Furthermore, such a procedure minimized

the danger that a juror might misstate his or her true feelings if asked in the presence of their peers to state the grounds of their bias.

In addition, any juror who had heard pretrial news accounts indicated he or she could lay aside any impression or opinion which he or she may have formed and render an opinion based upon the evidence. Irvin v. Dowd, 366 U. S. 717 (1960).

The victim was well known and was well liked in the community. However, this alone does not indicate that the jury drawn from that community was "death prone." See *Coleman v. State,* 237 Ga. 84 (226 SE2d 911) (1976).

Although the jury was erroneously allowed to render a verdict as to the underlying felony of armed robbery (Division 6, supra), this would not prejudice the jury as to the sentence for felony murder because the jury necessarily was required to hear the evidence of the underlying armed robbery and find beyond a reasonable doubt that the appellant was guilty of that offense in order to convict for felony murder and in order to find as an aggravating circumstance that the murder was committed while engaged in the commission of another capital felony. Simply stated, the jury had to make the same finding regardless of whether or not they were authorized to convict for the underlying offense of armed robbery.

We have independently examined the voir dire in order to determine whether a change of venue should have been granted due to jury prejudice regarding the guilt-innocence phase, and we have determined that a change of venue was not required. Irvin v. Dowd, supra; Murphy v. Florida, 421 U. S. 794 (1974); *Butler v. State,* 231 Ga. 276 (201 SE2d 448) (1973), cert. den. 420 U. S. 907 (1974); *Coleman v. State,* supra. In the instant case 20 percent of the veniremen were excused for partiality regarding guilt (12 out of 60). Compare with Irvin v. Dowd, supra (62 percent dismissal rate held to corroborate actual juror partiality); *Coleman v. State,* supra (49 percent dismissal rate held to corroborate absence of prejudicial bias); and *Butler v. State,* supra (36 percent dismissal rate held to corroborate absence of prejudicial community bias).

Appellant has not demonstrated that the "totality of the circumstances surrounding the trial prejudiced the jury in such a manner as to prevent a sentence determination based not upon the evidence presented but upon passion or prejudice." See Murphy v. Florida, supra.

We find that the sentence of death was not imposed under the influence of passion, prejudice or any other arbitrary factor. The evidence, beyond a reasonable doubt, supports the jury's finding of the following statutory, aggravating circumstances in this case: (1) that the offense of murder was committed while the offender was engaged in the commission of another capital felony. Code Ann. § 27-2534.1(b)(2); (2) that the offense of murder was committed against a peace officer while engaged in the performance of his official duties. Code Ann. § 27-2534.1(b)(8); and (3) that the murder was committed for the purpose of preventing a lawful arrest of himself. Code Ann. § 27-2534.1(b)(10).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed, and we find that the following similar cases listed in the appendix support affirmance of the death penalty. Appellant's sentence to death is not excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

ARGUED SEPTEMBER 11, 1979 — DECIDED OCTOBER 30, 1979.

*J. Donald Bennett, James A. Secord, Alston, Miller & Gaines, Jay D. Bennett,* for appellant.

*William M. Campbell, District Attorney, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.

APPENDIX.

*Johnson v. State,* 226 Ga. 378 (174 SE2d 902) (1970);

*Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Whitlock v. State,* 230 Ga. 700 (198 SE2d 865) (1973); *Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973); *Ross v. State,* 233 Ga. 361 (211 SE2d 356) (1974); *Spencer v. State,* 236 Ga. 697 (224 SE2d 910) (1976); *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977); 243 Ga. 120 (252 SE2d 609) (1979); *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979); *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979).