## 39670. COLLIER v. FRANCIS.

GREGORY, Justice.

Robert Lewis Collier was convicted of the offense of murder[1] arising out of the shooting death of a deputy sheriff attempting to arrest him following an armed robbery. His sentence of death was affirmed by this court. *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979), *cert. denied* 445 U. S. 946 (1980). Collier sought habeas corpus relief in Federal District Court. His application was dismissed without prejudice for failure to exhaust state remedies. This state habeas corpus petition was then filed in Butts Superior Court. The habeas court denied relief. We granted Collier's application for a certificate of probable cause to appeal. We affirm.

1. Collier contends the habeas court erred in failing to grant habeas relief on the ground the trial court refused to allow defense counsel to ask prospective jurors questions regarding bias or prejudice in favor of the death penalty. This issue is referred to as the reverse of the issue in Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968). The habeas court found error had been committed by the trial court but held the error to be harmless in that it related to a single juror. The direct Witherspoon issue was raised by defendant on appeal to this court. *Collier,* supra at 570. The reverse Witherspoon issue was not raised on appeal. Examination of the trial transcript reveals that the defendant undertook to raise this issue before the trial court with regard to two prospective jurors. One of these prospective jurors was later excused for cause by the court on an unrelated ground. In questioning Brown, the other prospective juror, Collier abandoned pursuit of the issue without eliciting a ruling by the trial court. Perhaps this accounts for his failure to present this issue on direct appeal. There must be a contemporaneous objection at trial in order for this court to review an issue on appeal. *Gilreath v. State,* 247 Ga. 814, 824 (4) (279 SE2d 650) (1981). In order to make an issue the basis for review, counsel must, at the time it arises ". . .

---

[1] Collier was also convicted of the offenses of armed robbery (three counts) and aggravated assault. One count of armed robbery was set aside on appeal.

invoke some ruling . . . respecting it. . . . A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later." *Joyner v. State,* 208 Ga. 435, 438 (67 SE2d 221) (1951). The trial transcript shows the following transpired with regard to Collier's questioning of the prospective juror on the subject of bias in favor of the death penalty.

"MR. BENNETT: And I assume from your previous answers that you have not had an occasion to form an opinion in this case?

"MR. BROWN: No, sir.

"MR. BENNETT: Do you see — do you feel that you can fairly and impartially set (sic) in judgment of this defendant?

"MR. BROWN: I feel that I can, yes, sir.

"MR. BENNETT: Do you feel that in every case where a person has been killed that the person who did the killing should be punished by death?

"MR. BROWN: Would you —

"MR. BENNETT: (Interposing) Did you understand my question?

"MR. BROWN: No, sir, I did not.

"MR. BENNETT: It's directed to the old eye for an eye theory, do you believe that because one person kills another one, that he of necessity should be put to death?

"MR. BROWN: Not of necessity.

"MR. BENNETT: Do you believe in every case of murder, if the evidence should show that it is murder, that the punishment should be death?

"THE COURT: Are you asking him to prejudge the case on his own qualifications, aren't you asking him really basically, technical questions of law which would be difficult for a layman to answer without a proper charge of the Court as to the law in a particular case, aren't you doing that?

"MR. BENNETT: Well, let me attempt to rephrase it, Your Honor, I am sorry.

"THE COURT: All right, sir.

"MR. BENNETT: Do you feel that you would be able to follow the Court's charge, and of course, I am not — you are to get the charge from the Court, not what I say here now, but if the Court should charge you to the effect that in order to find — in order to sentence a man to the electric chair, it would be necessary for you to find a certain aggravating circumstances, would you follow the Court's instructions in this regard, and unless you found those aggravating circumstances, impose some lesser sentence, does that sound —

"THE COURT: (Interposing) That's not the law, that's not

what the Court would charge, Mr. Bennett, you are not aware of what the Court would charge, you should have a little better knowledge of what I would charge, but that wouldn't be inclusive.

"We are concerned now with the guilt or innocence of the defendant, but now, you are stating portions of what the Court might charge, but you are not going all the way, the Court cannot give a charge at this time, because I don't know what the evidence will disclose, and I don't think that's a proper question, I don't see how he could answer that, he is not aware of all the Court would charge on that point, you see.

"MR. BENNETT: Yes, sir.

"THE COURT: I think if you would ask him if he would follow the charge of the Court, and he would accept the law from the Court as being the law, and apply it to the case and to the evidence, and ascertain whether or not he would, or wouldn't.

"MR. BENNETT: Mr. Brown, are you related in any way to any other juror that has been called today?

"MR. BROWN: No, sir."

With some 383 pages of transcript reporting voir dire examination, defendant points to no other attempt to raise the issue of juror bias in favor of the death penalty. The issue having been abandoned with regard to one prospective juror and the only other prospective juror questioned in this regard having been excused, we find no error.

2. During the sentencing phase of the bifurcated trial defense counsel asked a witness if she presently had respect for the defendant. An objection was made and sustained. On appeal we affirmed the ruling of the trial court. *Collier,* supra at 566 (11). Collier now contends that an unrecorded ruling by the trial court placed additional restrictions on his desire to present evidence during the sentencing phase. The restriction allegedly arose on two occasions, once during a recess while defense counsel and the trial judge were walking to dinner, and again upon their return to the trial judge's chambers where prosecuting counsel was present. The habeas court considered testimony from counsel and from the trial judge as to their recollections of what transpired during the unrecorded conversations. The habeas court found that Collier, "has failed to carry his burden of proof as to the allegation." The record of the trial fails to disclose any offer of proof which was made relating to the restrictions allegedly placed on counsel. Whether or not any restrictions were actually placed on counsel was in dispute, and this dispute was resolved against Collier by the habeas court. The record supports this determination.

3. We have examined Collier's remaining enumerations of error

and find them to be without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 4, 1983.

*Alston & Bird, Jay D. Bennett, J. Donald Bennett,* for appellant.
*David L. Lomenick, Jr., District Attorney, Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.