67644. HENLEY v. THE STATE.

DEEN, Presiding Judge.

Henry Howard Henley was indicted for the murder of Dimple Lumpkin and appeals from his conviction of voluntary manslaughter.

1. When a defendant's character has been placed in evidence and a witness testifies as to the character of the defendant for peaceable conduct and general good character, the state may test the witness's knowledge of a specific threat made upon the victim's life. *Mimbs v. State,* 189 Ga. 189 (5 SE2d 770) (1939). If a character witness testifies he has not heard of such a threat, it is not error to ask certain hypothetical questions to determine the witness's knowledge of the defendant's good character upon which his opinion is based. *Curry v. State,* 155 Ga. App. 829, 831 (273 SE2d 411) (1980). Appellant's contention that testimony of a threat was protected by the grant of a pre-trial motion *in limine* is without merit because the trial court can modify such a motion during trial to prevent a "manifest injustice." *State v. Johnston,* 249 Ga. 413, 415 (291 SE2d 543) (1982). Here appellant wished to cast suspicion upon the victim's husband, who had informed another witness that he was "afraid for her life," without the state being allowed to go into evidence of threats that appellant had made. We find no error. Moreover, appellant himself introduced this line of questioning in order to raise the above-mentioned suspicion.

2. During cross-examination of a detective in the sheriff's department, appellant asked what actions had been taken to eliminate the victim's husband as a suspect and if the witness felt "that everything could have been done to eliminate Mr. Lumpkin as a suspect." Upon the state's objection, both attorneys were called to the bench, and the court warned that the word "polygraph" could not be mentioned when it was determined that the detective intended to testify that the only police work that remained to be done was a polygraph test on Mr. Lumpkin. Appellant contends it was error to omit this testimony.

Polygraph testimony is inadmissible absent an express stipulation of the parties. *State v. Chambers,* 240 Ga. 76 (239 SE2d

324) (1977); *Jones v. State,* 161 Ga. App. 610 (288 SE2d 788) (1982). Where by stipulation a polygraph test is conducted and the results are inconclusive, they are inadmissible because they have no probative value. *Porterfield v. State,* 150 Ga. App. 303 (257 SE2d 372) (1979). Here, appellant wished to draw an inference that all possible suspects had not been eliminated from the case, through the use of evidence which had no probative value.

3. It was not error to admit stipulated copies of long distance charges from appellant's telephone shortly after the murder of Mrs. Lumpkin was alleged to have occurred. The state introduced this evidence to refute his defense that he was so intoxicated he remembered nothing from the time he left work and started drinking until he woke up in jail because he had passed out and that, therefore, he could not have committed the murder. These bills were relevant to prove a material fact; namely, to show that he was capable of carrying out the acts alleged because they were calls to his former wife and show no wrong numbers were dialed. *Harris v. State,* 142 Ga. App. 37 (234 SE2d 798) (1977); *Johnson v. State,* 148 Ga. App. 702, 703 (252 SE2d 205) (1979).

4. The trial court did not err in refusing to admit evidence of appellant's attempts to regain his memory through hypnosis. Appellant concedes that statements made while a witness is under hypnosis are not admissible because such statements are unreliable under the holding in *Alderman v. State,* 241 Ga. 496, 510 (246 SE2d 642) (1978), but contends he should have been permitted to bolster his testimony that he remembered nothing that occurred during the time of the murder. Appellant's reliance upon *Collier v. State,* 244 Ga. 553 (261 SE2d 364) (1979), in support of his argument is misplaced. That court held that while statements made under hypnosis were inadmissible because they are unreliable, an order preventing cross-examination of witnesses regarding being subjected to hypnosis is overbroad. In that case, the trial court rescinded the order and permitted the cross-examination as to hypnosis for purposes of testing the witness's credibility. Here, there is no contention that appellant's memory improved under hypnosis, and any testimony that he underwent hypnosis would have no probative value.

5. During cross-examination of Detective McDonald, appellant's counsel inquired as to the in-custody statement made by his client in which he stated he did not remember the victim's ever being present in his apartment. The state did not seek to introduce the statement into evidence against him. Appellant now contends that the court erred in charging the jury "... you should consider with great caution the evidence of any admission or statement by the defendant," because there was no evidence that he made an ad-

mission and this portion of the charge may have caused the jury to apply a stricter standard in judging the credibility of his testimony than that applied to other witnesses.

When this charge is considered as a whole we find no error. The court had previously given the general charge on the credibility of witnesses and did not state that he had ever made an admission, but stated rather that if the jury found he made either an admission or a statement, certain rules were to be applied in weighing such evidence. The jury was advised to consider "whether it was truthful, whether it was accurately repeated or recorded, whether the defendant understood what was said, the circumstances under which it was made, the emotions of hope or fear that may have existed." The court then instructed the jury that it was free to accept the statement in whole or in part, rejecting that which they believe to be untrue. In other words, the jury was to receive such a statement with great caution by considering all the circumstances under which it was given; and these circumstances obviously are favorable to the defendant. Considering the charge in its entirety we find that it does not suffer from the deficiencies complained of by appellant. *Payne v. State,* 162 Ga. App. 739 (293 SE2d 29) (1982). See also *Roland v. State,* 161 Ga. App. 197 (291 SE2d 41) (1982).

6. Failure to give a specific charge that bad character is one method of impeaching a witness is not a substantial error which is harmful as a matter of law under OCGA § 5-5-24 (c) (Code Ann. § 70-207). *Tanner v. State,* 228 Ga. 829, 833 (188 SE2d 512) (1972). The transcript shows that appellant did not file a timely written request for such a charge and, while the court did not specifically include bad character when it defined methods of impeaching witnesses, it did charge "the credit to be given a witness's testimony where impeached for bad character or for contradictory statements out of court shall be for the jury to determine." We find no error.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED FEBRUARY 1, 1984.

*Michael C. Cherof,* for appellant.
*Stephen A. Williams, Jr., District Attorney, Steven M. Harrison, J. O. Partain III, Assistant District Attorneys,* for appellee.