## 58701. THE STATE v. THOMASON.

CARLEY, Judge.

On the afternoon of August 4, 1977, an officer of the Columbus Police Department received a radio call to investigate a report of "a person slumped over the wheel" of a green 1972 Lincoln Continental, bearing a given Georgia tag number, parked in a designated shopping center parking lot. On arrival there the officer saw the described vehicle exiting the parking lot. He pulled out behind the Lincoln onto the roadway and followed it about two city blocks. When he turned on his blue light and blew his horn, the driver, appellee Thomason, moved over to the curb and "properly" parked the automobile on the right side of the roadway. In its final location, the car was

not illegally parked. Whether or not she was responding to the officer's question or volunteering the information is in dispute, but Mrs. Thomason stated that she had been drinking. Because of this statement and other indications such as "loud odor of alcohol, unsteady on feet, etc.," the officer arrested her for DUI. Mrs. Thomason resisted vigorously and the officer handcuffed her. After placing Mrs. Thomason in his patrol car, the officer retrieved her purse from the Lincoln and to make sure the parked car was "perfectly safe" he rolled up the windows and locked both doors, taking the keys with him. After transporting Mrs. Thomason to headquarters for a breath test, the officer returned and called for a wrecker to tow the car to storage. Prior to the car's removal he inventoried its contents, finding in the back seat a large amount of men's clothing, some real estate signs and a brief case containing a pocket calculator. In the front seat on the hump of the floorboard underneath the dash the officer found a "rose colored overnight bag." When he unzipped and opened the bag, he saw a large amount of United States currency. Upon further investigation at headquarters the bag was found to contain $14,614 in cash, and, in a side pocket, several pieces of paper suspected of being lottery tally sheets were also found.

Appellee Thomason was charged with driving under the influence and commercial gambling and indicted by the grand jury. She filed a motion to suppress evidence "alleged to be money or lottery paraphernalia" seized from the automobile. Her motion was denied. After her trial ended in a mistrial she filed a motion to reconsider the initial ruling on her motion to suppress, seeking the suppression of "all evidence seized as a result of an illegal arrest, search and seizure . . ." Her motion for reconsideration was granted and at the hearing the trial judge, expressing his "misgivings" as to the legality of the arrest, granted the motion to suppress. However, the order itself does not indicate upon what ground the evidence was suppressed. The appeal thus places at issue the legality of the stopping of the automobile, the arrest of Mrs. Thomason for DUI and impoundment of the automobile and inventory search.

1. With regard to the initial investigative stop of the

automobile, the state contends it was reasonable even though the arresting officer did not observe weaving or other erratic driving and no traffic violations had occurred. The appellee argues that "[f]actual and credibility determinations of this sort made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous. [Cits.]" *Johnson v. State,* 233 Ga. 58 (209 SE2d 629) (1974). We conclude that regardless of the absence of outward visible indicia of driving under the influence this was one of those situations in which there was "at least reasonable and articulable suspicion" to authorize the stopping and detaining of the motorist. Cf. Delaware v. Prouse, 440 U. S. 648 (99 SC 1391, 59 LE2d 660, 673) (1979); *Franklin v. State,* 143 Ga. App. 3, 4 (2) (237 SE2d 425) (1977) (U. S. cert. den., 435 U. S. 950). "A police officer has a limited right to an investigative stop of a person or vehicle. '[C]ircumstances short of probable cause for arrest may justify the stopping of a pedestrian or motorist for limited questioning. [Cits.]' *Anderson v. State,* 123 Ga. App. 57, 60 (179 SE2d 286)." *Merrill v. State,* 130 Ga. App. 745, 751 (4) (204 SE2d 632) (1974). Given the fact that the officer had received information that the driver of this automobile was slumped over the wheel in a shopping center parking lot, that he was ordered to investigate, and that he first spotted the automobile being driven onto a public thoroughfare, it is obvious that he had a legitimate purpose in stopping the automobile without a traffic violation having occurred in order to ascertain the condition of the driver. Clearly a limited but immediate inquiry was dictated by these circumstances and authorized under the law. Under the evidence the initial stop was reasonable.

2. We also agree with the state that there was sufficient probable cause for the appellee's arrest for DUI. The officer observed that after she got out of the car Mrs. Thomason had a strong odor of alcohol on her breath, her eyes were glassy and bloodshot and she was unsteady on her feet. She admitted she had been drinking and the officer concluded that "she had been drinking quite heavily." When he informed her that she was being charged with DUI and would have to be taken to

headquarters to take a breath test, she became violent and abusive and had to be hancuffed.

There is a "difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search." Draper v. United States, 358 U. S. 307, 311 (79 SC 329, 3 LE2d 327) (1959). "Under Code Ann. § 27-207 an officer may arrest without a warrant 'if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be failure of justice for want of an officer to issue a warrant.' (Ga. L. 1975, p. 1209). Whether or not an arrest violated this statute depends ' " 'upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.' Beck v. Ohio, 379 U. S. 89, 91 (85 SC 223, 13 LE2d 142)" ' *Sanders v. State,* 235 Ga. 425, 440 (219 SE2d 768)." *Bradford v. State,* 149 Ga. App. 839, 840 (256 SE2d 84) (1979).

In *Lewis v. State,* 149 Ga. App. 181 (254 SE2d 142) (1979), the defendant was found slumped over the wheel of his car which was in a ditch, and the arresting officer testified that his speech was slurred, there was a strong odor of beer on his breath and he was very unsteady on his feet. This court found these facts to be sufficient to support a *conviction* of DUI. The similar facts in the instant case are, therefore, sufficient to support a finding of *probable cause* for the appellee's arrest.

3. The warrantless search and seizure of the currency and lottery paraphernalia presents a more complex issue. The state insists that the search was justified because it was made pursuant to standard inventory procedures of impounded automobiles, one of the most widely recognized exceptions to the warrant requirement which was specifically upheld by the United States Supreme Court in South Dakota v. Opperman, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976).

In Opperman the defendant's automobile had been impounded for multiple parking violations and during a

police inventory search following standard procedures a bag of marijuana was found therein. The court recognized that "[w]hen vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents." Opperman, supra, at 369. The court held that since the standard procedure in inventorying the contents of the car was not a pretext concealing an investigatory police motive, and the inventory was not unreasonable in scope, there was no Fourth Amendment violation. However, "[t]he justification [for the inventory search] is necessarily premised on the validity of the impounding." *State v. McCranie,* 137 Ga. App. 369, 370 (223 SE2d 765) (1976).

"It is well established that a police seizure and inventory is not dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that." *Mooney v. State,* 243 Ga. 373, 375 (254 SE2d 337) (1979). Even though the decision to seize and inventory need not be based upon the "absolute necessity" to do so, unless the rationale for an inventory search inheres in the decision to seize and inventory, the impoundment itself may be "unreasonable" and the resulting inventory search invalid. *State v. Ludvicek,* 147 Ga. App. 784, 786-87 (250 SE2d 503) (1978). "Inventory searches have two purposes: to protect the vehicle and the property in it, and to safeguard the police or other officers from claims of lost possessions." United States v. Ducker, 491 F2d 1190, 1192 (5th Cir. 1974). In the instant case, it is conceded that the automobile, at the time Mrs. Thomason stopped it and all times after her arrest, was "properly parked," "was not impeding the flow of traffic" and "was not illegally parked." *Dunkum v. State,* 138 Ga. App. 321 (226 SE2d 133) (1976). Compare *Denson v. State,* 128 Ga. App. 456 (197 SE2d 156) (1973). And the automobile was "properly parked" in an urban area where "there were other cars parked on that side of the road." See *State v. Creel,* 142 Ga. App. 158 (235 SE2d 628) (1977). Compare *Highland v. State,* 144 Ga. App. 594 (241 SE2d 477) (1978). While it is true that these factors, standing alone,

will not invalidate a seizure and inventory, *Mooney v. State,* 243 Ga. 373, 376-377, supra, when the other circumstances of this case are considered in conjunction therewith, a finding that the officer's decision to seize and inventory was "unreasonable," while not demanded, is supported by the evidence before the trial judge.

In situations such as are here present, against the interest of the state must be weighed the citizen's interest in the privacy of the contents of his automobile. South Dakota v. Opperman, 428 U. S. 364, 379, supra. Mrs. Thomason requested the officer to lock her car. The officer complied. The officer agreed that the locked car was "perfectly safe." While the officer denies the request was made, Mrs. Thomason testified, and we must assume that the trial court found, that she asked the officer to call her husband or son to pick up the car and that the officer stated "I'll take care of it." However, the officer made no "reasonable effort" to comply with this request though he took Mrs. Thomason and the car keys to headquarters and left a fellow officer at the scene to protect the car. Thus, there was no danger to the vehicle and its contents until an attempt at compliance with Mrs. Thomason's request could be made. *State v. Ludvicek,* 147 Ga. App. 784, supra. The officer was not presented with an "abandonment" of the vehicle nor can Mrs. Thomason's husband or son be termed an "unwilling bailee," it being undisputed that the officer made no "reasonable effort" to comply with instructions that they be advised to pick it up and they were thus never given the opportunity to become "bailees," unwilling or otherwise. Compare *Mooney v. State,* 243 Ga. 373, 377, supra. Instead of making a "reasonable effort" to locate Mrs. Thomason's husband or son, the officer returned to the scene, called a tow truck and began an inventory. Under these circumstances, as in *Ludvicek,* we are compelled to the conclusion that the trial court was authorized to find that the impoundment was not reasonable, though perhaps a different result would be reached had the officer tried unsuccessfully to comply with Mrs. Thomason's request. Under Mrs. Thomason's version of the circumstances, only after the officer tried and failed in a "reasonable effort" to honor her request can it be said, under the totality of the evidence, that the valid

rationale for impoundment and inventory attached — the protection of the vehicle and the property in it and the safeguarding of the officers from claims of lost possessions. " 'In these circumstances the trial court was authorized, though not required, to find from the totality of the circumstances that the impounding of [Mrs. Thomason's] car . . .' " was unreasonable. *State v. Creel,* 142 Ga. App. 158, supra. "In the absence of evidence of record demanding a finding contrary to the judge's determination, this court will not reverse the ruling sustaining a motion to suppress." *State v. Smith,* 134 Ga. App. 602 (215 SE2d 345) (1975). We find no such evidence.

4. Since the trial court was authorized under the evidence to find that the impoundment itself was unreasonable and the resulting search of the car invalid, we need not decide whether the officer's decision to open the bag and inventory the contents was an "unreasonable" intrusion into Mrs. Thomason's Fourth Amendment freedoms.

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

ARGUED OCTOBER 3, 1979 — DECIDED FEBRUARY 7, 1980 —

*William J. Smith, District Attorney, Tasca A. Williams, Assistant District Attorney,* for appellant.
*John Swearingen, Ben B. Philips,* for appellee.