## 59728. CURRY v. THE STATE.

McMURRAY, Presiding Judge.

Defendant, along with another, was indicted in two counts for the offense of armed robbery with reference to the theft of two pocketbooks taken from two females "by intimidation and by use of a pistol and a knife." A wallet and $15 in money were taken from one female and a wallet and $90 were taken from the other. Defendant was tried and convicted and sentenced to serve 10 years as to each count, each sentence to run concurrently with the other. Defendant filed a motion for new trial which was later amended and after a hearing was denied. Defendant appeals. *Held:*

1. Defendant first urges error in the denial of his motion for new trial as to the general grounds thereof. He was identified by the victims as the perpetrator, and upon our full consideration of the evidence we find and so hold that the evidence was sufficient to satisfy the mind and conscience of a rational trier of fact (the jury in the case sub judice) that the defendant was guilty beyond a reasonable doubt of having robbed the females by the use of an offensive weapon. See *Dukes v. State,* 151 Ga. App. 312 (259 SE2d 706); *Driggers v. State,* 244 Ga. 160, 161 (1) (259 SE2d 133); *Moses v. State,* 245 Ga. 180 (1), 181 (263 SE2d 916).

2. The robbery allegedly occurred on October 13, 1978, at which time the robbers, after seizing the pocketbooks, fled, dropping the pocketbooks but taking the wallets and the money of the victims. On October 31, 1978, at approximately 2:00 a.m., police officers observed a suspicious automobile being driven on a street in the City of

Atlanta. The driver (defendant herein) of the car looked at one of the policemen, "went upon a curb" for about 30 feet after which he was stopped by the policeman who pursued in a police car. He was arrested for having a void safety inspection sticker, that is, "it was taken from one windshield and placed on another" and "riding on the curb," and "he had one headlight out." No charges were made against the three passengers. When the driver was "patted" down, another officer found a wad of money and cartridges. The money amounted to $99. The automobile was then searched and impounded, at which time a pistol, a holster, certain credit cards, and gas receipts were seized in the automobile. The defendant was later interrogated after having his constitutional rights read to him during which time he made an incriminating statement although it could be said that the statement was both exculpatory and inculpatory. The statement also involved three other individuals, one of whom was a juvenile, with reference to robberies near the Omni. As a result, the defendant and his co-indictee were identified by the victims from a line-up at police headquarters.

Defendant moved in a pretrial motion to suppress the statement made by him, the line-up evidence, and the physical evidence seized from the car. Both the testimony at the pretrial motion and during the trial were the same with reference to the stopping of the vehicle for riding on the curb, the finding of the voided inspection sticker which had been tampered with, and the subsequent arrest of the defendant and a search of the vehicle which was impounded and an inventory made. The line-up evidence was also the same.

During the hearing on defendant's motion to suppress, one of the officers testified that the defendant stated the automobile belonged to his father-in-law. The officer further testified that the other occupants of the automobile were not related to the defendant, were friends and acquaintances and had met defendant at the club, but they had no responsibility for the automobile.

The transcript and record are silent as to whether defendant made any request that any disposition of the automobile be made other than impoundment. Even if defendant had made such a request for a disposition other than impoundment, the officers could not have honored same as the automobile could not be lawfully operated by anyone in view of the voided inspection sticker and one headlight being out (it being approximately 2:00 a.m.). *Garner v. State,* 154 Ga. App. 839, 840 (1) (—- SE2d — ).

The officers had probable cause to arrest the defendant. See Code Ann. § 27-207 (Ga. L. 1975, p. 1209); *Highland v. State,* 144 Ga. App. 594 (241 SE2d 477); Gustafson v. Florida, 414 U. S. 260, 263-266 (94 SC 488, 38 LE2d 456). The trial court did not err in denying

defendant's motion to suppress evidence and in admitting into evidence at the trial the various items of evidence seized, including testimony of defendant's exculpatory and inculpatory statement after his arrest, as well as the line-up identification evidence wherein he was identified from the line-up procedure and later positively identified by the victims at the trial.

3. The defendant offered character witnesses in his behalf. On cross examination the trial court did not err in permitting the State to ask certain hypothetical questions to determine the witnesses' knowledge of the defendant's general good character upon which the opinion of the witnesses is based. See *Haire v. State,* 209 Ga. 378 (2) (72 SE2d 707). This cross examination may delve into particular transactions. See *Weldon v. State,* 84 Ga. App. 634 (2), 636-637 (66 SE2d 920). Of course the hypothetical question must embody the facts offered in evidence by the State against the defendant. See *Holley v. State,* 191 Ga. 804 (5), 806 (14 SE2d 103), and *Eberhart v. State,* 121 Ga. App. 663, 664 (2) (175 SE2d 73). As the hypothetical questions allowed by the court included only facts in evidence, the trial court did not err in allowing the character witnesses to answer same. Nor did the trial court err in denying defendant's motion for mistrial.

4. Another character witness failed to appear although he was under subpoena. The trial court granted a short recess in order for counsel for the defendant to determine if he could get this witness to court. The court denied a request that the proceedings be suspended until this witness arrived. The granting of a continuance during the trial because of the absence of a material witness rests within the sound discretion of the trial court, that is, in applying the eight requirements as set out in Code Ann. § 81-1410 (Ga. L. 1959, p. 342). *Carroll v. Crawford,* 218 Ga. 635 (1), 638 (129 SE2d 865). Further, the absent witness' testimony here would have been merely cumulative of the testimony given by four other previous character witnesses. However, the court allowed counsel to state in his place what he expected this witness' testimony to be, that is, that he was familiar with defendant's reputation in the community for peacefulness and that his reputation was good and that he would believe him under oath and that he had made three different attempts during the lunch hour to make contact with the witness but had been unsuccessful in doing so. We find no reversible error here.

5. The trial court did not err in instructing the jury as to the law of flight. The evidence before the court showed the defendant fled the scene after the robbery and thereafter, several weeks later when he saw the police, he attempted to flee in a vehicle. The evidence of flight was not too remote in time from the crime in this instance. See in this

connection *Fulford v. State,* 221 Ga. 257, 258 (2) (144 SE2d 370); *Welborn v. State,* 236 Ga. 319, 320 (1) (223 SE2d 698), and cases cited therein. There is no merit in this complaint.

6. During deliberations of the jury a request by the jury was made for a re-charge. The inquiry of the jury was discussed with counsel and no objection was made with reference to the requested re-charge. The court began to instruct the jury with reference to the fact that if there were any question about recollection of the testimony this was for the jury to determine when it was discovered that the defendant was not present. Whereupon the court refused to instruct the jury further until the defendant was brought into the courtroom. The trial court then proceeded to instruct the jury in response to the inquiry made. When it was discovered that the defendant was not present his counsel stated: "We'll waive . . ." Instead, the court preferred to wait for his arrival. Any error resulting from the fact that defendant was not present when the court began its instruction was harmless in this instance especially in light of the willingness of defendant's counsel to waive defendant's presence. In this instance the court ceased to charge until the defendant was brought into the courtroom. See *Johnson v. State,* 238 Ga. 59, 60-61 (230 SE2d 869); Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705).

7. Defendant next contends that the sentence was excessive in view of the evidence. The sentence for armed robbery as found in Code Ann. § 26-1902 (Ga. L. 1968, pp. 1249, 1298; 1969, p. 810; 1976, p. 1359) is "imprisonment for life, or by imprisonment for not less than five nor more than 20 years." There is no merit in this complaint inasmuch as the sentence was within the punishment set forth by law. Further the defendant is entitled to a review of same by the sentence review panel as set forth in Code Ann. § 27-2511.1 (Ga. L. 1974, pp. 352, 358; 1977, pp. 1098, 1104). See also in this connection *Meeks v. State,* 142 Ga. App. 452 (236 SE2d 119).

8. In support of defendant's motion for new trial upon the ground of newly discovered evidence, defendant presented the sworn affidavit of the co-indictee who had pleaded guilty in which it was shown that prior to trial he had conferred with counsel for the defendant and advised him that the defendant did not participate in these robberies but that he and another had committed the several robberies, including this one; but he refused to testify. This affidavit shows clearly that counsel knew before trial of the evidence and that he made a trial decision not to call the affiant as a witness. Under the circumstances, the new and material evidence was not discovered after the rendition of a verdict against him but prior thereto. See Code § 70-204; *Fowler v. State,* 203 Ga. 124 (45 SE2d 439). Compare

*Bell v. State,* 227 Ga. 800, 801 (3), 805 (183 SE2d 357). There is no merit in this complaint.

Having reviewed the entire record and considered all of the enumerations of error and finding no reversible error, it cannot be said that the defendant was denied a fair trial in violation of due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and the corresponding clauses of the Constitution of Georgia.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Shulman, Banke, Birdsong, Carley and Sognier, JJ., concur. Smith, J., dissents.*

SUBMITTED APRIL 15, 1980 — DECIDED SEPTEMBER 24, 1980 —

*Robert M. Coker,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Assistant District Attorney,* for appellee.

SMITH, Judge, dissenting.

I believe the search of appellant's automobile was violative of the Fourth Amendment. I therefore dissent from Division 2 of the majority opinion.

The majority appears to justify the search of appellant's automobile on the ground that the police had probable cause to arrest appellant for certain traffic offenses. I do not argue with the contention that the police had probable cause to arrest. However, it does not follow that, merely because the arrest was legal, the search was also legal. Under the circumstances of this case, I believe the state has failed to carry its burden of proof as to the reasonableness of the search of appellant's automobile. See *State v. Thomas,* 150 Ga. App. 170 (257 SE2d 28) (1979).

Two possible bases exist for the state's contention that the search of appellant's automobile was lawful: 1) that probable cause existed for the search and 2) that the search was a valid inventory search. I find neither rationale persuasive under the facts of this case.

Clearly, probable cause to search the automobile did not flow from the arrest. Appellant was arrested for various completed offenses and, at the time of arrest, was not suspected of participation in any other offense. See *Rowland v. State,* 117 Ga. App. 577 (161 SE2d 422) (1968). On the basis of the arrest alone, no valid reason existed for the search of the automobile.

During the search incident to arrest, the police discovered money and two cartridges. Under the holding of the Georgia Supreme Court in *State v. Handspike,* 240 Ga. 176 (240 SE2d 1) (1977), the

search incident to arrest did not exceed its permissible scope. See also United States v. Robinson, 414 U. S. 218 (94 SC 467, 38 LE2d 427) (1973); Gustafson v. Florida, 414 U. S. 260 (94 SC 488, 38 LE2d 456) (1973). While the items seized could therefore be taken into consideration by the police in determining whether they had probable cause to search appellant's vehicle, I reject the notion that the discovery of these items, when viewed in conjunction with other evidence of illegal conduct (i.e. commission of various traffic offenses and possession of a void inspection sticker), provided the police with probable cause to search appellant's vehicle for contraband or "fruits of crime." See Anderson v. State, 123 Ga. App. 57, 59 (179 SE2d 286) (1970); Cunningham v. State, 133 Ga. App. 305, 307-308 (211 SE2d 150) (1974).

Since the search of appellant's vehicle was not based upon probable cause, it may only be justified, under the facts of this case, as an inventory search of an impounded vehicle.[1] See South Dakota v. Opperman, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976). The majority concludes the search was proper. I cannot agree.

"It is well established that a police seizure and inventory is not dependent for its validity upon the *absolute necessity* for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that." (Emphasis supplied.) Mooney v. State, 243 Ga. 373, 375 (254 SE2d 337) (1979). The question is one of reasonableness.[2] State v. Thomason, 153 Ga. App. 345 (265 SE2d 312) (1980). "In determining whether an inventory search is reasonable, we must . . . look, as a threshold inquiry, to the propriety of the impoundment, since the act of impoundment gives rise to the need for and justification of the inventory. If impoundment is not necessary, then the concomitant search is unreasonable. Accord, State v. Boster, 217 Kan. 618, 539 P.2d 294 (1975); Altman v. State, 335 So.2d 626 (Fla. App. 1976); State v. Bales, 15 Wash. App. 834, 552 P.2d 688 (1976). The state's interest in impounding must outweigh the individual's

---

[1]In my view, this justification is questionable from the outset. The arresting officer testified that, upon finding the money and cartridges, he "suspected [appellant] as a robber." "The search of defendant's automobile was clearly pursuant to an investigatory motive and was not a constitutionally reasonable routine inventory search within the meaning of South Dakota v. Opperman, 428 U. S. 364, supra." Rohrig v. State, 148 Ga. App. 869, 871 (253 SE2d 253) (1979).

[2]"The fact that the [purposes of the impoundment] . . . might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable . . ." Cady v. Dombrowski, 413 U. S. 433, 447 (93 SC 2523, 37 LE2d 706) (1973); Chambers v. Maroney, 399 U. S. 42, 51 (90 SC 1975, 26 LE2d 419) (1970).

Fourth Amendment right to be free of unreasonable searches and seizures; although the expectation of privacy with respect to an automobile is significantly less than the traditional expectation of privacy associated with the home, this interest is still constitutionally protected, *South Dakota v. Opperman,* supra." State of Minn. v. Goodrich, 256 NW2d 506, 510 (Minn. 1977). Where a vehicle has been impounded, the inventory search serves "three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell,* 458 F.2d 960, 961 (CA9 1972); the protection of police against claims or disputes over lost or stolen property, *United States v. Kelehar,* 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, Cooper v. California, [386 U. S. 58, 61-62 (87 SC 788, 17 LE2d 730) (1967)] . . ." South Dakota v. Opperman, supra at 369. However, as indicated above, "[t]he justification [for the inventory search] is necessarily premised on the validity of the impounding." *State v. McCranie,* 137 Ga. App. 369, 370 (223 SE2d 765) (1976). Unless *reasonably necessary,* impoundment cannot be justified. State v. Goodrich, supra. "[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . ." Cooper v. California, supra at 59.

I believe that, under the facts and circumstances of the instant case, the state has failed to demonstrate that the impoundment of appellant's vehicle was reasonably necessary. It is uncontroverted that three able-bodied adults were with appellant at the time of arrest. None of them was arrested. Appellant's vehicle was not otherwise subject to impoundment. Compare *Garner v. State,* 154 Ga. App. 839 (1980). Under these circumstances, there was a substantial possibility that the impoundment of appellant's vehicle could have been avoided by simply asking appellant whether he would prefer to have one of his companions take custody of it. It is not certain that such an arrangement would have been possible. For instance, none of those present may have been licensed to operate a motor vehicle. However, because the police made no effort whatever to permit appellant to make alternative arrangements for the removal and safekeeping of his automobile, in spite of the presence of appellant's companions, the "inventory" search was, in my view, illegal. See State v. Rome, 354 S2d 504, 505 (La. 1978); *State v. Ludvicek,* 147 Ga. App. 784 (250 SE2d 503) (1978); South Dakota v. Opperman, supra.

"In situations such as are here present, against the interest of the state must be weighed the citizen's interest in the privacy of the contents of his automobile . . ." *State v. Thomason,* supra at 350. Thus, in *Thomason,* this court upheld the trial court's grant of the

motion to suppress where the police made no "reasonable effort" to comply with the defendant's request that her husband be located and given the opportunity to take custody of her automobile.

In the instant case, it does not appear that appellant made any request that one of his companions be permitted to take custody of his automobile while he was under arrest. However, in my view, the fact that no such request was made does not ipso facto validate the impoundment and inventory search of appellant's vehicle. Our constitution places a requirement of reasonableness upon searches and seizures. Cady v. Dombrowski, 413 U. S. 433, 439 (93 SC 2523, 37 LE2d 706) (1973). A determination as to the reasonableness of a search cannot be based upon simplistic and rigid formulas, but must depend upon the facts and circumstances of each case.[3] In the instant case, I believe appellant should have been informed that one of his companions could take custody of his vehicle if appellant so desired. In my view, the failure of the arresting officer to make this minimal effort invalidated the search even though it cannot be said with certainty that such action would have rendered impoundment (and inventory search) "unnecessary." See *State v. Thomason,* supra at 350.

---

[3]See Schneckloth v. Bustamonte, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973), wherein the Court applied a "totality of the circumstances" test in determining whether a non-custodial consent search was "voluntary." The Court held: " . . . that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id at 248, 249. In the case at bar, appellant was under arrest when the police decided to impound his vehicle.