## 61783. THE STATE v. DARABARIS.

BIRDSONG, Judge.

Motion to suppress. Bruce Darabaris, while seated in his automobile parked in a shopping mall parking lot, apparently indecently exposed himself to a female patron of the mall. Upon complaint, a security officer employed by the mall stopped Darabaris from driving from the mall parking lot. Darabaris was escorted from his car to the mall security office to await the arrival of a law enforcement officer. When the officer arrived, Darabaris was identified by the female complainant as being the one who had exposed himself to her. Darabaris was then taken into custody by the police officer. The mall security officer testified: "Well, at the time that he [the arresting officer] was ready to take the suspect into custody, I asked him, 'Well, what are we going to do with the car?' I said, 'Aren't you going to tow it?' He said, 'Well, yes, we can, if you want us to.' So, at that time, I said 'Well, I think it's best you do tow it in,' and, 'The man won't be here and the car will be out there and any

vehicles left in the parking lot are vulnerable . . . .' "

When asked, "Did you have a conversation with anyone at mall security about that particular automobile," the arresting officer said, "Yes, sir, he was asked what do you want to do with the automobile, and he said we should have it towed to keep the vandalism, prevent the mall from being liable for the vehicle. So, at that time we called for the list wrecker and I inventoried the vehicle."

The evidence also shows that Darabaris was in the security office at some time but there is no evidence indicating where Darabaris was when the conversation between these two individuals concerning the car took place. (The trial court found as a fact that Darabaris was seated in the back seat of a patrol car when the conversation took place, though we find no evidence in the suppression transcript in support of such a finding of fact.) The transcript does show that the officer deliberately did not include Darabaris in the conversation for the officer stated that suspects generally were asked no questions, thus the officer did not make any inquiry of Darabaris as to what disposition Darabaris might wish to make of the car. For all the transcript shows, Darabaris might have been out of ear shot, in another room (or, as found by the trial court, in the back seat of a patrol car), or the conversation might have been conducted soto voce.

As a result of the request by the mall security officer to tow the car, the police officer conducted an inventory search of Darabaris' auto. During that inventory, a paper bag containing a quantity of marijuana was discovered. Darabaris was charged with indecent exposure and possession of marijuana. He moved the trial court to suppress the fruits of the search, which motion was granted by the trial court. The state brings this appeal enumerating as its sole error, the grant of the motion to suppress. *Held:*

This court is graced in this case with an excellently written court order. In rendering our decision, we will take the liberty of quoting extensively from his order.

"The State, in this case, attempts to justify the warrantless search of Mr. Darabaris' car as a search which falls within the . . . inventory exception which allows searches of impounded automobiles. . . .[I]n inventorying a vehicle prior to impoundment, the State is protecting three distinct needs. These needs are as follows: (1) protection of the owner's property while it remains in police custody; (2) the protection of the police from potential danger; and (3) the protection of the police against false claims of stolen or lost property. [South DaKota v. Opperman, 428 U. S. 364 (1976)].

"In *State v. Ludvicek,* 147 Ga. App, 784 [250 SE2d 503] (1978), the court was faced with a situation where a car was stopped by police after it had been observed travelling [sic] at a high rate of speed. The

driver of the car appeared to be intoxicated and was arrested and charged with drunken driving. . . . [T]he arresting officer was informed by Mr. Ludvicek that he had borrowed the car from a Ms. Alexander and that she was awaiting the return of her car at his residence. The arresting officer ascertained that these facts were indeed true and that there was no report that the car was stolen. . . . The Court of Appeals ruled in *Ludvicek* that the inventory search of the car under those circumstances was not reasonable. The court held that cases 'supporting the state's right to impound, are founded on a doctrine of necessity'. . . . [T]he individual's right of privacy is superior to the power of police to impound a car unnecessarily. . . . 'when the driver of a motor vehicle is arrested and . . . *the arrestee expresses a preference as to towing service and designates an appropriate carrier and destination for the vehicle, it is unnecessary for the police to impound it'* . . . . (emphasis added.)

" '. . . while we do not wish to impose unnecessary burdens upon an already overburdened police force, *we do not believe it would have been unreasonable for the arresting officer to seek instructions from Ms. Alexander inasmuch as he had been told that she was the owner,* he had verified the accuracy of that information, he knew where she was located . . . *Ludvicek* at 786 (emphasis added). . . . This case demonstrates the weight that an individual's right of privacy should carry against the state's interest and need in impounding and inventorying a vehicle . . . . The court went on to say that in *Ludvicek* where the owner was not even present, it was not too much to ask for the police officer to seek instructions from the owner as to her wishes regarding disposition of the car. In the case at bar, the arresting officer sought instructions from mall security as to their wishes regarding disposition of the car; however, the officer did not even question the owner who was present, in the back of the patrol car, as to whether he had a preference regarding towing service or destination for the car. . . . In the circumstances surrounding Mr. Darabaris' arrest, it is apparent that it was not necessary for the police officer to impound the vehicle in order to protect the valuables inside. . . . [A]s was stated in the case of *State v. Thomason,* 153 Ga. App. 345 [265 SE2d 312] (1980), 'unless the rationale for an inventory search inheres in the decision to seize and inventory, the impoundment itself may be 'unreasonable' and the resulting inventory search invalid.' Id. at 349. . . .

". . . [W]here the officer knows the identity of the owner . . . in question, he should make at least a reasonable effort to determine the owner's wishes regarding disposition of the vehicle and that only after such a reasonable effort is made would the necessity for impoundment attach.

". . . [W]here, as in this case, the owner of the vehicle was present and could have expressed a preference regarding disposition of his vehicle, the necessity for police impoundment and inventory would not attach. Had the officers allowed Mr. Darabaris to express his preference as to disposition of his vehicle, all three of the state interests in impounding and inventorying a vehicle (i. e., protecting the owner's property, protecting the police from potential danger, and protecting the police from false claims of stolen or lost property) as well as the individual's right of privacy would have been protected. There was no necessity to impound the vehicle and, consequently the rationale for the inventory search did not exist. Therefore, this search can only be deemed unreasonable by the standards set forth by the Georgia Courts and the evidence obtained by the police in this instance should be suppressed."

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

DECIDED JUNE 30, 1981.

*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellant.
*N. Kenneth Daniel,* for appellee.