63447. THE STATE v. HOPKINS.

CARLEY, Judge.

While patrolling the downtown streets of Macon at 2:40 a.m., two officers observed appellee and a companion seated in a parked car. One of the officers had in his possession an outstanding warrant for appellee's arrest for probation violation. Recognizing appellee, the officers parked their vehicle and approached the car occupied by appellee. The officers ordered appellee to get out of the vehicle and, when he complied, appellee was handcuffed and placed in the patrol car. After ascertaining that neither appellee nor his companion

owned the vehicle in which they were sitting, the officers allowed appellee's companion to depart. The officers then radioed the station to contact a wrecker service to tow the car to the impoundment area. While awaiting the arrival of the wrecker, the officers conducted a search of the vehicle and discovered a .32 caliber revolver under the driver's seat. The owner of the vehicle arrived on the scene prior to the wrecker and the vehicle was released to her. When appellee was subsequently charged with possession of a firearm by a convicted felon, he moved to suppress the revolver found by the officers. Appellee's motion to suppress was granted and, pursuant to Code Ann. § 6-1001a (d), the state appeals.

1. "[W]e need not decide whether this was a valid [inventory] search . . . for,. . .' (t)here are . . . alternative grounds arguably justifying the search of the car in this case." *Parks v. State,* 150 Ga. App. 446 (1) (258 SE2d 66) (1979).

2. In People v. Belton, 407 NE2d 420, 421 (N.Y. 1980), the Court of Appeals of New York held: "A warrantless search of the zippered pockets of an *unaccessible* jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might gain access to the article." (Emphasis supplied.) Two judges dissented pointing out that the "search was conducted by a lone peace officer who was in the process of arresting four unknown individuals whom he had stopped in a speeding car owned by none of them and apparently containing an uncertain quantity of a controlled substance. The suspects were standing by the side of the car as the officer gave it a quick check to confirm his suspicions before attempting to transport them to police head-quarters . . ." Belton, 407 NE2d at 424, supra.

The Supreme Court of the United States granted certiorari and stated "the question at issue" to be: "When the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he *was* riding?" (Emphasis supplied.) New York v. Belton, 453 U.S. 454, 455 (101 SC 2860, 69 LE2d 768) (1981). In resolving the "question at issue," the Supreme Court noted that "no straightforward rule has emerged from the litigated cases respecting the question . . . of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants. The difficulty courts have had is reflected in the conflicting views of the New York judges who dealt with the problem in the present case, and is confirmed by a look at even a small sample drawn from the narrow class of cases in which courts have decided whether, in the course of a search incident to the lawful custodial arrest of the occupants of an automobile, police

may search inside the automobile *after the arrestees are no longer in it.* On the one hand, decisions in [some] cases [cits.], have upheld such warrantless searches as incident to lawful arrests. On the other hand, in [some] cases [cits.], such searches, in comparable factual circumstances, have been held constitutionally invalid . . . While the Chimel case [(395 U. S. 752, (89 SC 2034, 23 LE2d 685) (1969))] established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its *recent occupant . . .* In order to establish the workable rule *this category of cases* requires, . . . we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, *search the passenger compartment of that automobile.*" (Emphasis supplied.) New York v. Belton, 453 U. S. at 459, supra.

It is apparent that the holding of the Supreme Court in New York v. Belton is that a search of the passenger compartment of an automobile recently occupied by an arrestee is a valid search incident to an arrest, even if the arrestee had no "immediate control" of the area at the time the search was conducted. The decisive factor is whether the arrestee was, at the time of his *arrest,* a "recent occupant" of the automobile, not whether the automobile and its contents were in his immediate control at the time of the *search.* The Supreme Court did not reverse the *factual* finding of the lower court that Belton's jacket was "unaccessible" and therefore was not within his "immediate control" *at the time it was searched.* Indeed, the Supreme Court noted that the inaccessibility of Belton's jacket was one of the "circumstances" which prompted the grant of certiorari. See New York v. Belton, 453 U. S. at 454, supra. This was recognized by Mr. Justice Brennan, who stated in his dissent: "*As the facts of this case make clear,* the Court today substantially expands the permissible scope of searches incident to arrest by permitting police officers to search areas and containers *the arrestee could not possibly reach at the time of arrest.* These facts demonstrate that at the time Belton and his three companions were placed under custodial arrest — which was *after* they had been removed from the car, patted down, and separated — none of them could have reached the jackets that had been left on the back seat of the car." (Emphasis supplied in part.) New York v. Belton, 453 U. S. at 466, supra.

Accordingly, it cannot be urged that the Supreme Court in Belton authorized a search of the passenger compartment of a vehicle which is no longer physically occupied by an arrestee only in a situation where the arrestee still retains *possible* access to the car and

its contents. Indeed, as noted above, the Supreme Court apparently was of the opinion that the very result of drawing such distinctions in the "recurring factual situation" presented by "recent" occupancy was "disarray" in the "search of a vehicle incident to an arrest" cases. See New York v. Belton, 453 U. S. at 459, fn. 1, supra. It was to resolve this "disarray" that the Supreme Court sought to establish in Belton " '(a) single familiar standard . . . to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' [Cit.]" New York v. Belton, 453 U. S. at 458, supra. That "single standard" established in New York v. Belton for the "category of cases" in which the arrestee is a "recent" occupant of the car only and no longer has access to it or its contents is: The officer "may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U. S. at 460, supra. Thus the fundamental principle established in Chimel, supra, that the scope of a search incident to an arrest is limited to "the area within the immediate control of the arrestee" is in no way altered by the Belton decision. "The area within the immediate control of the arrestee" is merely defined by Belton as being "the passenger compartment of the automobile in which he *was riding*. . ." (Emphasis supplied.) New York v. Belton, supra, 69 LE2d 768, 772. See in this regard fn. 3 of the Belton opinion. This "single standard" is applicable even though, as was true in Belton, at the time of the search of such a vehicle, articles in the passenger compartment are "unaccessible" to the arrestee.

In the instant case, as in Belton v. New York, appellant "was the subject of a lawful custodial arrest . . . The search of [appellant's vehicle] followed immediately upon that arrest. The [gun] was located inside the passenger compartment of the car in which [appellant] had been a passenger just before he was arrested. The [gun] was thus within the area which we have concluded was 'within the arrestee's immediate control' within the meaning of the Chimel case. The search of the [automobile], therefore, was a search incident to a lawful custodial arrest, and it did not violate the Fourth and Fourteenth Amendments. Accordingly, the judgment is reversed." New York v. Belton, 453 U. S. at 462, supra. See also *Conrad v. State,* 160 Ga. App. 909 (288 SE2d 618) (1982).

*Judgment reversed. Quillian, C. J., Deen, P. J., McMurray, P. J., Banke, Birdsong and Pope, JJ., concur. Sognier, J., concurs in the judgment only. Shulman, P. J., dissents.*

*Willis B. Sparks III, District Attorney, George F. Peterman, Assistant District Attorney,* for appellant.

*Russell M. Boston, Rick W. Griffin,* for appellee.

SHULMAN, Presiding Judge, dissenting.

Because I cannot agree with the majority's interpretation of the U. S. Supreme Court's decision in New York v. Belton, 453 U. S. 454 (101 SC 2860, 69 LE2d 768), I must respectfully dissent from both divisions of the majority opinion.

1. In its Belton opinion, the U. S. Supreme Court recognized the rationale behind the "search incident to a lawful arrest" exception to the warrant requirement of the Fourth Amendment: ". . . a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence. [Chimel v. California, 395 U. S. 752,] 763 (23 LE2d 685, 89 S. Ct. 2034)." New York v. Belton, supra, 69 LE2d 768, 773. The court went on to note that, while the above rule was one which could be stated clearly, its application to individual cases had been difficult since "courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant." Id., p. 774. In an attempt to establish "the workable rule" required in a case involving a search incident to a lawful arrest, but "in no way alter[ing] the fundamental principles established in the Chimel case regarding the basis scope of searches incident to lawful custodial arrests" (Id., p. 775, n. 3), the court concluded that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id., p. 775.

By holding that "whether the automobile and its contents were in [the arrestee's] immediate control at the time of the search" is *not* the "decisive factor" involved in a valid search incident to a lawful arrest, the majority has vitiated the vital portions of the law governing such searches as enunciated in Chimel v. California and reaffirmed in New York v. Belton. As stated earlier, the rationale which permits a search incident to an arrest to occur without a warrant is the need to remove any weapons or evidence the arrestee might attempt to use or destroy. When appellee Hopkins was handcuffed and placed in the backseat of the patrol car, no valid

search incident to his arrest could be conducted on the car he had formerly occupied since he was no longer in a position to be able to reach within the car to gain possible access to a weapon or evidence. Since no portion of the passenger compartment was within Hopkins' immediate control at the time of the search, the search was not a valid search incident to a lawful arrest.

The majority makes much of the lower court's factual determination in New York v. Belton that Belton's jacket, located on the automobile's backseat, was "inaccessible" to the four suspects involved in that case. A crucial point of the Belton case is that those suspects were *"standing by the side of the car"* (emphasis supplied) while the officer quickly confirmed his suspicions that marijuana was present in the car. In standing next to the car, one or all of the suspects had a portion of the passenger compartment within his immediate control. In its Belton decision, the U. S. Supreme Court attempted to put an end to case by case factual determinations as to just how much of the passenger compartment an arrested "recent occupant" of the car could reach — it forsook the method by which the reach of each suspect is measured to determine the area of his immediate control for a more concise rule: if a suspect can reach into the passenger compartment to gain possible access to a weapon or evidence, he is deemed able to reach into the *entire* passenger compartment and, "if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." Id., p. 775. I read New York v. Belton as authorizing, as a search incident to an arrest, a search of the entire passenger compartment of an automobile whose occupant has just been arrested *while that occupant is in a position to have possible access to the vehicle to obtain a weapon or destroy evidence,* i.e., when all or a portion of the passenger compartment is within the arrestee's area of immediate control. In the case at bar, the U. S. Supreme Court's holding in New York v. Belton does not authorize a search of the automobile in which appellee was sitting at the time of his arrest because, at the time of the search, appellee was handcuffed and locked inside the patrol car and his companion had already departed. Thus, the searched vehicle did not encompass "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." Chimel v. California, supra, p. 763.

2. Since I cannot condone the search conducted as one having occurred incident to appellee's lawful arrest, I must address the state's contention that the search qualified as a lawful inventory search. An inventory search of a vehicle impounded by a police department is constitutionally permissible. South Dakota v. Opperman, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000). However, if the

impoundment of an automobile is unreasonable, the inventory search which follows is invalid, and the fruits thereof must be suppressed. *State v. Ludvicek,* 147 Ga. App. 784 (250 SE2d 503). Because I conclude that the impoundment of the automobile in which appellee was sitting at the time of his arrest was unreasonable, I would uphold the trial court's decision to suppress the evidence procured by means of the inventory search which followed the impoundment.

The automobile in question was legally parked when the officers approached. From both a registration check and information received from appellee and his companion, the officers knew that Mamie Tatum, and not either of the occupants of the car, owned the vehicle. One of the arresting officers testified that appellee expressed a desire to call the owner and was told he could make a telephone call from the jail. No effort to contact the owner was made by the police.

"Where the officer knows the identity of the owner in question, he should make at least a reasonable effort to determine the owner's wishes regarding disposition of the vehicle and that only after such a reasonable effort is made would the necessity of impoundment attach." *State v. Darabaris,* 159 Ga. App. 121, 123 (282 SE2d 744). See also *Mulling v. State,* 156 Ga. App. 404 (274 SE2d 770); *State v. Thomason,* 153 Ga. App. 345 (3) (265 SE2d 312); *State v. Ludvicek,* supra. The inability of the car to start on its own, the safety of the car's present location, and the belief that a police tow truck would arrive on the scene before the owner would do not excuse the officers' failure even to attempt to contact the owner of the vehicle to ascertain her wishes regarding her car. "While we do not wish to impose unnecessary burdens upon an already overburdened police force, we do not believe it would have been unreasonable for the arresting officer[s] to seek instructions from Ms. [Tatum] inasmuch as [they] had been told she was the owner [and they] had verified the accuracy of that information . . . Perhaps a different result would be proper if Ms. [Tatum] could not have been located following at least a reasonable effort. [Cit.] However, under the circumstances presented, [I] concur with the judgment of the trial court that impoundment was unnecessary and therefore the resultant inventory was also improper." *State v. Ludvicek,* supra, p. 786.

For the reasons stated, I would affirm the trial court's grant of appellee's motion to suppress and I must respectfully dissent from the majority's ruling to the contrary.