### 76906. MADDOX v. THE STATE.
(374 SE2d 810)

BANKE, Presiding Judge.

Maddox was convicted of violating the Controlled Substances Act by possessing methamphetamine with intent to distribute. On appeal, he enumerates as error the denial of his motion to suppress the contraband on the ground that it was seized during an unlawful, warrantless search of his motor vehicle.

The appellant and a male companion were observed by Officer Tyner of the Hall County Sheriff's Department standing next to a truck parked at a convenience store at approximately 3:00 o'clock in the morning. Upon being questioned by the officer, the appellant stated that the truck belonged to him and that its headlights were inoperative. A second patrol car arrived at the scene, and the two officers agreed to escort the appellant while he drove his truck to a location where, according to him, he would be able to get mechanical assistance. One patrol car preceded the truck, while the other followed it. En route, the officers received information by radio that two warrants were outstanding for the appellant's arrest. Based on that information, the officers directed the appellant to pull his truck over to the side of the road and placed him under arrest.

When asked if there was any particular towing service he preferred to pick up his truck, the appellant responded that he wanted the vehicle to be left at the side of the road. His companion thereupon volunteered to make arrangements to have the disabled vehicle picked up. The appellant was then taken to the sheriff's office by one of the officers, while his companion was driven to a nearby telephone booth by the other officer. However, because of certain comments made by the companion which cast doubt on whether he would actually be able to arrange for the retrieval of the vehicle, the officer radioed for a wrecker and immediately returned to the scene of the arrest, where he conducted a search of the vehicle "to secure anything

of value." The officer testified that he was back on the scene within only a few minutes after leaving. During the course of the search, a syringe and other drug paraphernalia were seized from under the armrest between the driver and passenger seats, and a white powdery substance was seized from the floorboard on the passenger side. The white powder was ultimately determined to be methamphetamine. *Held:*

1. In *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981), the United States Supreme Court held that a contemporaneous warrantless search of the interior of a motor vehicle conducted in connection with a custodial arrest of the vehicle's driver may be considered a lawful search incident to arrest even though the vehicle is no longer occupied. The appellant contends that the *Belton* rationale cannot be extended to the present case because the search was conducted not merely after his removal from the vehicle but also after his removal from the scene. However, in *State v. Watkins*, 182 Ga. App. 431 (356 SE2d 82) (1987), we upheld the validity of an automobile search on the basis of *Belton* under precisely such circumstances, citing *State v. Hopkins*, 163 Ga. App. 141, 143 (2) (293 SE2d 529) (1982), for the proposition that " '[t]he decisive factor is whether the arrestee was, at the time of his *arrest*, a "recent occupant" of the automobile, not whether the automobile and its contents were in his immediate control at the time of the *search.*' " *State v. Watkins*, supra at 433. (Emphasis from original.) See also *Oswell v. State*, 181 Ga. App. 35 (351 SE2d 221) (1986). Since, in the present case, the evidence established without dispute that the search occurred within a few minutes of the appellant's removal from the vehicle, we hold that the motion to suppress was properly denied.

The appellant's reliance on *Whisnant v. State*, 185 Ga. App. 51 (363 SE2d 341) (1987), is misplaced. In that case, the search occurred some two hours after the initial stop and arrest of the driver and after the vehicle had already been seized and transported to the county jail.

2. Having determined that the search was conducted as a lawful incident to the appellant's custodial arrest, we do not reach the issue of whether the search could also be upheld as a valid inventory search. See generally *State v. Hopkins*, supra.

*Judgment affirmed. Birdsong, C. J., Deen, P. J., McMurray, P. J., and Pope, J., concur. Carley, Sognier, Benham, and Beasley, JJ., concur specially.*

SOGNIER, Judge, concurring specially.

I agree with Judge Beasley that the judgment in this case is correct because the items were seized under a valid inventory search under *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49

LE2d 1000) (1976) and *Colorado v. Bertine*, 479 U. S. 367 (107 SC 738, 93 LE2d 739) (1987), and not because of a search incident to a lawful arrest under the *Belton* principles (*New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981)). However, I cannot concur in all that is postulated in her special concurrence.

I am authorized to state that Judge Carley and Judge Benham join in this special concurrence.

BEASLEY, Judge, concurring specially.

I concur in the judgment because the items were seized pursuant to a valid inventory search under *Opperman*[1] and *Colorado v. Bertine*, 479 U. S. 367 (107 SC 738, 93 LE2d 739) (1987), and not because of a search incident to a lawful arrest under the *Belton*[2] principles.

The *Belton* and *Opperman* cases and their underlying rationales for motor vehicle searches are different, and it is important to maintain the distinction, as the United States Supreme Court does. These two cases represent two types of warrantless but permissible vehicle searches but not the only two which the Court has identified. *United States v. Ross*, 456 U. S. 798 (102 SC 2157, 72 LE2d 572) (1982), decided the same year as *Belton* but after it, also involved the search of a vehicle and containers found therein. The search and seizure was treated neither as an inventory search nor as a search incident to arrest. See footnotes 2 and 11. It focused instead on a third category, the scope of vehicle searches as permitted in *Carroll v. United States*, 267 U. S. 132 (45 SC 280, 69 LE 543) (1925), that is, where there is probable cause to believe there is contraband in the vehicle.

The Court held that search of the containers could proceed if such would be within the scope of a search authorized by a magistrate based on probable cause to believe the vehicle contained contraband. This would include containers "that may conceal the object of the search." Id. at 825. Although *Belton* also embraced containers in the vehicle as being within the scope of the vehicle search, it arose from a different foundation and we, like the Supreme Court, must differentiate the categories so as not to lose sight of the reason for each rule. As the Court stated, "[n]o single rule of law can resolve every conflict" in cases of warrantless searches of stopped vehicles.

The facts do not support an application of the *Belton* principles. When the truck was searched, appellant, the one person who was arrested, was already on his way to jail in a patrol car with one of the officers and distanced by miles from the truck. The arrest was complete, insofar as on-the-scene aspects of the procedure employed by

---

[1] *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976).
[2] *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981).

the officers were concerned. They perceived no need to search the vehicle as an incident of the arrest or as part of the process of arrest. Instead, they allowed defendant access to the vehicle to get cigarettes, advised him to secure it, acceded to the request to let the passenger arrange its removal and drove away.

As far as defendant was concerned, he thereafter was not coming back, and he had lost all control of the truck. When they drove away, his access to it and its contents evaporated. He could not even give any further instructions or directions regarding its custody or contents, as he could no longer communicate with the passenger who was to make arrangements for its removal from the roadside.

The passenger, who was not arrested, was also no longer at the scene, as he and the other officer had driven away. Enroute to a phone, the passengers' statements and attitude, and the circumstances, led that officer to believe that the passenger, who was serving as arrestee's agent, was also not coming back to assume any control of the truck. He would not be permitted to drive it away, because of its lack of lights, and it was fairly clear that he was not going to make arrangements for its towing, as originally indicated. The officer returned to the truck to assure security, knowing there were tools inside, and decided enroute to arrange for its towing himself. He called for towing and inventoried the contents.

*Belton* does not fit these circumstances. It refines the particular exigency principle developed in *Chimel v. California*, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969), which is founded on "the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *New York v. Belton,* supra at 457. The Court endeavored to delineate a more definitive guideline than provided by *Chimel* for law enforcement officers and courts with respect to the physical scope of the search of a person arrested in an automobile setting. The Court held: "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile . . . [and] the contents of any containers found within the passenger compartment, . . . ." *New York v. Belton,* supra at 460. See the Court's explanation of its *Belton* holdings in *Michigan v. Long*, 463 U. S. 1032, 1048 (103 SC 3469, 77 LE2d 1201) (1983).

In fashioning this rule, the Court designated what area would be considered "within the immediate control of the arrestee" for constitutionally permissible vehicle searches incident to arrest. Keeping in mind the purposes which legitimize such a search, i.e., to prevent the arrestee's access to weapons or his concealment or destruction of evidence, the search in this case does not fall within the category. Re-

moval of the arrestee from the scene had already accomplished these ends, and there was no intention or reason to search the vehicle as part of the arrest. Even if the period of time involved here can be considered "contemporaneous," the search was not incident to the arrest. It was not made to secure the arrestee or the contents of the vehicle from the arrestee's grasp.

An application of *Belton* requires at least some semblance of a relationship between an arrestee's access to the vehicle's passenger compartment and the search, else the rationale for this type of warrantless search disintegrates and the logic of the principles espoused in *Chimel* and *Belton* vanishes. The "necessity" for the intrusion into a person's property which is created by the reasons and purposes of a *Chimel/Belton* authorization were not even claimed to be present and had in fact vanished. *State v. Ludvicek*, 147 Ga. App. 784 (250 SE2d 503) (1978) discussed this fundamental prerequisite of necessity in the inventory search context. See also *Michigan v. Long*, supra at 1048-1050, and a more recent automobile search case, *New York v. Class*, 475 U. S. 106, 111 (106 SC 960, 89 LE2d 81) (1986). The result of the majority's opinion would come close to allowing the search of a vehicle with every arrest.

On the other hand, the search was a valid automobile inventory search. Both officers testified that, while they were on the road in separate cars on separate missions, having left the scene a few minutes before, they had each independently decided to impound the truck. The officer who had taken the passenger to call someone to come for the truck became convinced that no one would come for it. So he returned to find it unlocked and, after calling for towing, he inventoried it so as to secure its contents as a routine procedure of the department before turning it over to the tow truck operator. As such, the search was a valid exercise of the law enforcement agency's caretaking function, which was recognized in *Cady v. Dombrowski*, 413 U. S. 433, 441 (93 SC 2523, 37 LE2d 706) (1973). *Opperman*, supra; *Colorado v. Bertine*, supra; *Colsson v. State*, 177 Ga. App. 840, 841 (2) (341 SE2d 318) (1986); *Goodman v. State*, 255 Ga. 226, 229 (13) (336 SE2d 757) (1985); *State v. Gilchrist*, 174 Ga. App. 499, 500 (1) (330 SE2d 430) (1985). Cf. *Strobhert v. State*, 165 Ga. App. 515 (301 SE2d 681) (1983).

DECIDED OCTOBER 21, 1988.

*G. Hammond Law III*, for appellant.
*C. Andrew Fuller, District Attorney*, for appellee.