## A96A0160. HERRINGTON v. STATE OF GEORGIA.
### (471 SE2d 289)

RUFFIN, Judge.

The State filed a complaint instituting in rem forfeiture proceedings pursuant to OCGA § 16-13-49 against a 1991 Chevrolet Silverado truck owned by David Herrington. The State instituted the proceedings after a May 1995 search of the vehicle produced 3.96 ounces of marijuana. After a bench trial, the trial court determined that the vehicle stop and search were valid and that the vehicle was being used to facilitate a sale of marijuana. The trial court forfeited the property to the State. Herrington appeals, alleging an illegal pretextual stop. For the reasons which follow, we affirm.

1. In his first enumeration of error, Herrington contends the trial court erred in finding that police executed a legal stop pursuant to *Terry v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

An initial investigative stop requires that the arresting officer have only reasonable, articulable suspicion of criminal conduct, not probable cause. *State v. Thomason,* 153 Ga. App. 345 (1) (265 SE2d 312) (1980). An officer may conduct a brief investigatory stop of a vehicle if that stop is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. *Evans v. State,* 216 Ga. App. 21 (2) (453 SE2d 100) (1995). This specific, articulable suspicion must be based on the totality of the circumstances, including objective observations, known information about the individual, patterns of certain kinds of lawbreakers, and inferences drawn and deductions made by trained law enforcement personnel. See *Cheatham v. State,* 204 Ga. App. 483 (1) (419 SE2d 920) (1992).

The police had the following information in this case. David Smith, a confidential informant, arranged to purchase one-half pound of marijuana from Herrington. Smith testified he had purchased marijuana from Herrington on several occasions in the past four years. On prior occasions, Smith would place the order and Herrington would meet him somewhere. Herrington always arrived in a black, mid-sized Chevrolet truck with tinted windows. On this occasion, Herrington instructed Smith to meet him at a specific car wash in approximately 15 minutes.

Smith informed Officer Brown, with the Multiagency Narcotics Squad, of the deal. Brown instructed Smith not to go to the location and requested assistance from Investigators Martin, Meredith, Potts and Gentry. Officer Scott positioned himself between Herrington's residence and the car wash, where he observed Herrington's truck headed in the direction of the car wash a short time later. Investigators Brown, Meredith and Martin drove to the car wash in an unmarked car and observed Herrington from various surveillance positions.

Herrington arrived at the car wash in a black 1991 Chevrolet Silverado pickup truck. He sat in the truck for some time, then began vacuuming the truck. While vacuuming, Herrington removed a brown paper bag from the front left portion of the truck's bed and placed it on the ground. Herrington washed his vehicle and then placed the brown paper bag back in the truck in the same location. He waited approximately ten more minutes, then left the car wash.

Officer Martin advised other officers in the area of Herrington's departure in the pickup truck with a Purple Heart tag. Officer Gentry radioed Officer Potts with the same information when Herrington passed him.

Officer Ralston, with the Barrow County Sheriff's Department, was in the area and heard some conversation over the radio regarding a black pickup truck. Officer Ralston saw a black truck in front of him and noticed that Officer Potts was trying to proceed in the same direction as the truck, but was blocked by traffic. Officer Ralston, therefore, proceeded to follow the truck.

Officer Ralston testified he "didn't know if the man was drunk or on drugs or what it was. When he went around the curve to go to the red light, he sort of hit the grass. I guess he was looking at the DUI Task Force Unit and me behind him or whatever." Officer Ralston further testified, "I seen it weave. That's the reason I did stop it. . . . I stopped it because it did weave."

When Herrington exited the truck, Officer Ralston asked for his driver's license and insurance. Officer Potts arrived shortly thereafter and ran a check on Herrington's driver's license number. Herrington denied possessing any illegal contraband and consented to a search of his truck. The search revealed a brown paper bag on the driver's side back bed. Inside the paper bag was a plastic bag containing 3.9 ounces of marijuana.

Based on this evidence, the trial court did not err in finding the police had specific, articulable facts sufficient to give rise to reasonable suspicion of criminal conduct. *Evans*, supra at 23. Smith's identification of Herrington as the supplier of the marijuana and his description of Herrington's vehicle, coupled with Herrington's presence at the designated car wash, "remove the police's actions beyond

the realm of either the 'unparticularized suspicion or hunch' standard articulated in *Terry* . . . or 'mere caprice or arbitrary harassment.' [Cit.]" *Burdette v. State*, 210 Ga. App. 471, 473 (436 SE2d 502) (1993).

Furthermore, Officer Ralston testified he pulled the car over because he saw it weave onto the grass. Even though the officer did not cite Herrington with a traffic offense, the trial court could have determined that a reasonable officer would have made the stop under the same circumstances. *Hines v. State*, 214 Ga. App. 476, 477 (448 SE2d 226) (1994). "It is evident that the stop of a vehicle is authorized if an officer observes the commission of a traffic offense. [Cit.]" *Hines*, supra at 477.

Accordingly, we affirm the trial court's finding that the stop was reasonable.

2. Herrington next asserts that the consent he gave to search his truck was involuntary in that it was tainted by the illegal stop. It is not disputed that Herrington consented to a search of his truck. Herrington contends, however, that since the stop was pretextual, proof of voluntary consent alone is insufficient to eliminate any taint from the illegally seized marijuana. See *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 514) (1988). Since we have already determined that the stop was not pretextual, this claim lacks merit.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MAY 9, 1996.

*Barry M. Hazen*, for appellant.
*Timothy G. Madison, District Attorney, James L. Moss, Jr., Robin R. Riggs, Assistant District Attorneys*, for appellee.