62688. THOMAS v. THE STATE.

POPE, Judge.

Thomas appeals his convictions of burglary and motor vehicle theft.

The evidence presented at trial established that on or about September 21, 1980 the offices of Leasing International on Peachtree Road in Atlanta were burglarized and all the keys for the company automobiles were removed. A 1980 Chevrolet was found caught on a retaining wall in the parking lot and a 1971 Mercedes was missing. About 6:30 p.m. the evening of September 22, acting on a tip from an informant, police located the defendant and the Mercedes in the vicinity of Ollie and Harwell Streets in Atlanta. Detective Larry Loy testified that he observed Thomas and his co-defendant, Andrew Spanky Howard, walking toward Ollie Street carrying an exhaust pipe and the mufflers from the Mercedes. A few minutes later Loy spotted the car parked down the block on the wrong side of the street. Thomas was outside the car on the passenger side when Loy approached, pulled out his weapon and badge and announced that both persons were under arrest. Loy stated that both men "started to run," but before Thomas "could take probably one step" Loy held him and placed him under arrest; there was a "slight struggle . . . [Thomas] was passively trying to get loose." Howard got away. Thomas was instructed to place his hands "on the driver's side rear fender of the car" while Loy frisked him. Thomas' palm print was subsequently recovered by police from the rear area of the car near the exhaust system.

Thomas testified that he left his job at Charlie Magruder's at about 3:30 p.m. on the afternoon of September 22 and took the Sandy Springs bus to the MARTA train. He got off the train at the Ashby

Street station and started walking home toward Simpson Street when he came upon Howard, his first cousin. Howard asked him for help in repairing the Mercedes. Thomas testified Howard, who was 18 years old and had been living at a halfway house, "started talking about this and that, about you know, the muffler situation and how he needed to get it back on, take it back down to one of his counselors, workers." They picked up the muffler and started walking to the car, but because it was heavy Howard decided to go get the car and drive it back to the muffler. When Howard pulled up, the police car came up behind him, Detective Loy "jumped out of the car, pulled out his pistol, and Spanky ran." The police officer grabbed Thomas, pushed him up against "the back end of the car" and searched him. Thomas denied struggling or attempting to flee. He also denied any knowledge that the Mercedes was stolen and participation in the theft or burglary. Howard's mother testified that her son told her that Thomas (her nephew) had nothing to do with the crimes.

Thomas and Howard were tried jointly without a jury and were represented by separate counsel. No evidence was presented in Howard's behalf. When Howard was called as a witness by Thomas' attorney, Howard's attorney objected that Howard did not wish to testify and wished to "take the Fifth Amendment." The trial judge found both Howard and Thomas guilty.

After pronouncing sentence the trial judge advised Howard of his right to have counsel appointed if he wished to appeal. At that time the following exchange took place: Howard stated that "Johnny Thomas, there, he didn't have nothing to do with that about the car that was taken, stolen. He didn't have nothing to do with it, which was — I went up to him and asked him —." The judge replied: "I've already found him guilty. When he was on trial, when it made some difference, you sat there and held your peace, and the court takes that as you were trying to hold your peace and refuse to testify in the case and not get on the stand so that you wouldn't have to give any explanation. I've already heard the evidence." When Howard reminded the judge that his attorney had told him to remain silent, the judge responded, "Well, when he was on trial, you could have got up and testified to that effect. Now, the court finds that the fact that you refused to get up or you failed to get up and testify in his behalf or to let the court know what your position was on it was that you took your chances that the Court would find you not guilty or maybe him not guilty, or at any rate, at the worst, the Court would find you guilty and find him not guilty, and since you were serving time, it wouldn't make much difference. I've seen those angles before. You could have testified just as well earlier. . . ." After several more statements in the same vein, the judge sentenced Thomas.

On appeal, Thomas asserts (1) that there was insufficient circumstantial evidence to exclude every other reasonable hypothesis save that of his guilt; (2) that the trial court considered inadmissible hearsay evidence in reaching its verdict and failed to properly admit crucial testimony in his defense; and (3) that he received ineffectual assistance of counsel at the trial level.

1. The evidence of Thomas' guilt is circumstantial. There were no eyewitnesses to the burglary or car theft. Thomas made no admissions connecting himself to the crimes. "There is no direct evidence that he had any control (possession) or even knowledge (constructive possession) of the [stolen car]. The only direct evidence was that he looked nervous, was present when another committed a crime, and fled from the police. 'To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.' Code Ann. § 38-109." *Denham v. State,* 144 Ga. App. 373, 374 (241 SE2d 295) (1977).

The trial judge rejected Thomas' evidence in favor of the conflicting evidence presented by the state and on appeal we must construe the evidence most strongly in favor of upholding the verdict. *Beard v. State,* 151 Ga. App. 724 (1) (261 SE2d 404) (1979). Thomas' mere presence in or near the stolen car and attempt to flee is insufficient to prove guilt. *Williams v. State,* 126 Ga. App. 350 (190 SE2d 785) (1972). However, Thomas attempted to explain that he was present at the scene because he was on his way home from work and just happened upon his cousin. The judge found that Thomas' testimony was "illogical" since the defendant departed the MARTA train at a station which appeared to the judge as an unreasonable point of departure for someone who was heading to the defendant's home address as Thomas claimed. Thomas attempted to flee and to "passively" free himself from the policeman's grip. Although not conclusive of guilt, this can be seen as circumstantial evidence showing guilty knowledge. Compare *Prather v. State,* 116 Ga. App. 696 (1) (158 SE2d 291) (1967). This is important in the present case because Thomas' testimony was to the effect that he believed his cousin had proper possession of the Mercedes.

Another factor connecting Thomas to the crimes charged was his palm print lifted by police from the area of the car near the exhaust pipe. "To warrant a conviction based solely on fingerprint evidence, the fingerprints corresponding to those of the defendant must have been found in the place where the crime was committed, and under such circumstances that they could only have been impressed at the time when the crime was committed. [Cits.] These cases require the state to prove to the exclusion of every reasonable

hypothesis that the fingerprints could only have been impressed at the time the crime was committed." *Barnett v. State,* 153 Ga. App. 430 (1) (265 SE2d 348) (1980).

The evidence indicated that the police had Thomas place his hands on the rear fender of the car while he was frisked. Detective Loy stated that the print was lifted not from that location but from an area near the exhaust system at the rear of the car. Thomas contended his fingerprints were found in the area on which he was leaning while being frisked. "In making a determination of whether any other reasonable hypothesis exists, the defendant's explanation must be taken into consideration insofar as it is consistent with the circumstantial evidence properly admitted." *Barnett v. State,* supra at 432. However, since there was a conflict of evidence as to the location of the fingerprints on the car, the credibility of the witnesses is for the judge's determination, where the trial judge hears the case without intervention of a jury. Accord, *Simmons v. State,* 111 Ga. App. 553 (1) (142 SE2d 308) (1965). We conclude that under the circumstances of the present case, the evidence taken as a whole, though entirely circumstantial, was sufficient when given its strongest intendment to exclude every other reasonable hypothesis save that of defendant's guilt.

2. It cannot be said that the trial court considered hearsay evidence in arriving at the verdict, for the court is presumed to ignore inadmissible evidence if it says it will be ignored. *Haas v. State,* 146 Ga. App. 729 (6) (247 SE2d 507) (1978). Further, the evidence of the co-defendant after completion of the trial in seeking to absolve this defendant by trying to help out his friend and relative after exercising his right to refuse to testify at trial is not a cause for a new trial. See *Curry v. State,* 155 Ga. App. 829 (8) (273 SE2d 411) (1980).

3. Defendant's counsel was privately retained and is prima facie competent. *Irby v. State,* 156 Ga. App. 761 (1) (275 SE2d 391) (1980); *Suits v. State,* 150 Ga. App. 285 (1) (257 SE2d 306) (1979). It is true that present counsel might have handled the trial differently, but in no way can it be said that ineffective assistance of counsel has been established. *Solomon v. State,* 247 Ga. 27 (1) (277 SE2d 1) (1981); *Jones v. State,* 243 Ga. 820 (12) (256 SE2d 907) (1979); *Hammond v. State,* 157 Ga. App. 647 (5) (278 SE2d 188) (1981); *Whitt v. State,* 157 Ga. App. 10 (5) (276 SE2d 64) (1981).

*Judgment affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED FEBRUARY 4, 1982.

*William D. DeGolian,* for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Assistant District Attorney,* for appellee.