A91A0064. IN THE INTEREST OF J. T. M., a child.
A91A0065. IN THE INTEREST OF M. B. J., a child.
(409 SE2d 256)

BEASLEY, Judge.

The juvenile court adjudged appellants to be delinquent by reason of their attempted theft of an automobile. The separate appeals, which proceed on identical enumerations of error raising only the gen-

eral grounds, are consolidated.

In juvenile proceedings, "the standard of proof on charges of a criminal nature is the same as that used in criminal proceedings against adults — proof must be beyond a reasonable doubt. [OCGA § 15-11-33 (c)]; [Cits.]" *M. W. W. v. State of Ga.*, 136 Ga. App. 472, 474 (221 SE2d 669) (1975).

On review of the sufficiency of the evidence to support an adjudication of guilt, "that view of the evidence most favorable to the State must be taken, for every presumption and every inference is in favor of the verdict [or adjudication]." *Swain v. State*, 74 Ga. App. 391, 393 (39 SE2d 727) (1946); *Thomas v. State*, 161 Ga. App. 159, 161 (1) (288 SE2d 112) (1982). Where there is a conflict in the evidence, "the credibility of the witnesses is for the judge's determination, where the trial judge hears the case without intervention of a jury." *Thomas*, supra at 162 (1). This applies to juvenile court proceedings on petitions alleging delinquency. See OCGA § 15-11-33 (a).

Positive evidence supports the following sequence of events. On Father's Day, Sunday, June 17, 1990, which was also M. B. J.'s 15th birthday, he and 16-year-old J. T. M. went to the Chapman home in J. T. M.'s car sometime after 1:30 p.m. The Chapman home is less than a mile from J. T. M's home. The boys played basketball with the Chapman boy and watched a video. They left before 4:00 p.m.

On the way to J. T. M.'s house, they stopped at the Eiland home around the block from J. T. M.'s home. Ben Eiland's 1982-280ZX Datsun automobile, which J. T. M. had previously asked to drive, was in the carport. Ben was not at home, and he was missing the main set of keys. On an occasion less than two weeks before, the keys were on the seat of his father's truck when only he and J. T. M. used the truck. Ben had a spare set so he could drive the car, and he did not tell his mother the keys were missing.

That Sunday afternoon, Mrs. Eiland was upstairs watching television and dozing. Around 4:00 p.m. she was alerted by a noise which sounded to her like a car crash or car door in her own or the neighbor's driveway. She walked to the window to see if her son was out there, and she heard a knock at the door, directly below the window. She looked down and saw at the door a young man whom she immediately recognized as J. T. M., a former next-door neighbor whom she had seen over a period of the last four years. J. T. M. played basketball with her son. The boy said something aloud to someone. He did not wait for her to respond, and as he walked away from the door she clearly saw his whole body and recognized it as J. T. M.'s. She saw her son's car rammed up against a tree and went out to see if anyone was in it. The car's bumper was broken and the hatchback was dented. When she saw the boy at the door, the car was not in the carport. Finding no one around, she went in and tried to phone her

husband but got no answer. She went back out, and her son was coming with the neighbor from next door, where he had been watching television until about 4:00 p.m. After telling him that J. T. M. had been there and not to touch the car, she went back in to call the police, who came promptly. Her perception was that J. T. M. was wearing a bright red shirt and black or dark grey shorts, although there was evidence that he was wearing a pink shirt and light pants that afternoon.

The two boys arrived in J. T. M.'s car at his house around the block shortly after 4:00 p.m., went in briefly, and then walked two houses down, played basketball and went inside to look at a yearbook. J. T. M.'s father was washing his car and, to dry it, drove in the neighborhood and around the block past the Eiland house, which was about one-half mile around from J. T. M.'s house. When he returned, he told J. T. M. and M. B. J. that he had seen police cars at the Eiland home. They wanted to go see what happened, so he drove them by slowly. This was about 5:00 p.m. They did not determine the cause of the police presence, and although the two boys were at J. T. M.'s home for several hours before they went out that evening for supper, they did not make any further inquiry.

The police took written statements from the boys the next day, after they had been individually confronted that night in the presence of their parents and denied the charge. According to both statements, which were admitted in evidence, the boys were at Eiland's around 3:00 p.m. before going to the Chapman's house. J. T. M's statement acknowledges that Mrs. Eiland looked out the window when the door-knocking occurred, but he said M. B. J., not he, knocked.

There was no evidence whatsoever that there were two instances that afternoon of a young man knocking on the door while Mrs. Eiland was upstairs and leaving before she answered it, after she looked out. The trier of fact was not required to discredit Mrs. Eiland's positive identification of J. T. M. because of the discrepancy in the description of the color of his clothing. She recognized him because of his physical characteristics, not because of what he wore. Nor was the court obligated to credit the boys' statements that they were at Eiland's around 3:00 p.m., before rather than after going to Chapman's. There was opportunity before making their statements to the police to collaborate and fabricate. They were hampered in their effort to extricate themselves because they knew Mrs. Eiland had looked out when the door was knocked on.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Applying the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), there was

sufficient evidence to find that J. T. M. and M. B. J. were delinquent by reason of their acts, which if committed by persons 17 years of age or older would constitute their being parties to the crime of attempting to take Ben Eiland's automobile. OCGA §§ 16-4-1; 16-8-2; 16-2-20.

Judgment affirmed. McMurray, P. J., Banke, P. J., Pope and Andrews, JJ., concur. Sognier, C. J., Birdsong, P. J., Carley and Cooper, JJ., dissent.

CARLEY, Judge, dissenting.

The majority correctly notes that, in juvenile proceedings, "the standard of proof on charges of a criminal nature is the same as that used in criminal proceedings against adults — proof must be beyond a reasonable doubt. [Cits.]" M. W. W. v. State of Ga., 136 Ga. App. 472, 474 (221 SE2d 669) (1975). In my opinion, however, the majority errs in holding that this standard was met in the two instant cases. I must, therefore, respectfully dissent.

As against J. T. M., there is no direct evidence that he ever entered or attempted to move the victim's car. Stripped of its verbiage, the evidence cited by the majority would only authorize a finding that J. T. M. was seen knocking on the door to the victim's house on the afternoon that an *otherwise unidentified perpetrator* may have attempted to steal the car. However, J. T. M. was a friend and classmate of the victim, so his presence at the scene was not necessarily suspicious. In fact, he himself *freely acknowledged* that he had gone to the house to invite the victim to play basketball. Moreover, even if J. T. M. had had no reasonable explanation for his visit to the victim's house, " '[p]resence at the scene of a crime and nothing more will not support a conviction.' [Cit.]" M. W. W. v. State of Ga., supra at 475.

There is a dispute in the evidence as to the *time* that J. T. M. was present at the victim's house. However, there is no dispute that his mere presence at the victim's house is the *only* evidence purporting to authorize the finding of his delinquency. The contention that the evidence also showed that J. T. M. had obtained possession of a set of keys to the victim's car some weeks before the apparent theft is without merit. His purported prior possession of the keys to the victim's car is based upon nothing more than rank speculation and conjecture and there is no evidence, direct or circumstantial, which would support such a finding. "A bare suspicion of the defendant's guilt is not sufficient. [Cit.]" Diggs v. State, 90 Ga. App. 853, 857 (1) (84 SE2d 611) (1954). "Circumstances which would authorize a bare conjecture of guilt are not in any case sufficient to warrant a conviction." Hammond v. State, 15 Ga. App. 471, 473 (83 SE 860) (1914). In the absence of any *probative evidence* that J. T. M. did anything other than knock on the victim's door shortly before the automobile was

discovered some distance down the driveway, his adjudication of delinquency for attempting to steal the automobile should not be allowed to stand. "Construing the evidence most strongly against the accused, a bare suspicion of his guilt may arise therefrom. Suspicion is not evidence, and a verdict based alone on suspicion is unauthorized by law." *Williams v. State,* 13 Ga. App. 685 (79 SE 763) (1913).

The case against M. B. J. is even weaker than that against J. T. M. The only purported evidence as against him is his own acknowledgment that he had accompanied J. T. M. to the house for the purpose of extending an invitation to the victim to play basketball. Accordingly, even if the evidence had authorized a finding of J. T. M.'s delinquency, the adjudication of M. B. J.'s delinquency would nevertheless have to be reversed. *Smith v. State,* 188 Ga. App. 415, 416 (1) (373 SE2d 97) (1988).

Every presumption and every inference to be drawn from *the evidence* is in favor of the juvenile court's adjudication of appellants' delinquency. However, an appellate court is not authorized to presume from the juvenile court's adjudications of appellants' delinquency that sufficient evidence in support thereof must necessarily exist. Construing the evidence most strongly against appellants, they were present at the victim's house shortly before the victim's mother discovered that the victim's car was no longer parked in the carport. In my opinion, such evidence, no matter how suspicious, was *not* sufficient to authorize a finding of appellants' delinquency for committing an attempted theft of the victim's car before they were observed knocking on the door to the victim's house. Presumably, the juvenile court and a majority of this court is of the opinion that appellants' "suspicious" presence at the victim's house would authorize a finding that they were necessarily responsible for *any and every otherwise unexplained occurrence* at the victim's house which may have been discovered after their departure from the premises. I cannot subscribe to that analysis and must respectfully dissent.

I am authorized to state that Chief Judge Sognier, Presiding Judge Birdsong and Judge Cooper join in this dissent.

DECIDED JULY 3, 1991 —
RECONSIDERATION DENIED JULY 25, 1991 — ▮▮▮▮▮▮▮

*John P. Partin,* for appellants.
*Douglas C. Pullen, District Attorney, Edward F. Berry, Assistant District Attorney, Andrew Prather II, Solicitor, Melvin E. Cooper, Assistant Solicitor,* for appellee.